249 P.3d 1015 (2011)
STATE of Washington, Respondent,
v.
Valentin SANDOVAL, Petitioner.
In the Matter of the Personal Restraint of Valentin Sandoval, Petitioner.
No. 82175-5.
Supreme Court of Washington, En Banc.
Argued June 10, 2010.
Decided March 17, 2011.
*1017 Nancy P. Collins, Washington Appellate Project, Seattle, WA, for Petitioner.
Douglas Robert Mitchell, Grant County Prosecutor's Office, Ephrata, WA, for Respondent.
Sarah A. Dunne, Nancy Lynn Talner, ACLU of Washington Foundation, Michelle Jensen, US Customs & Border Protection, Seattle, WA, amicus counsel for American Civil Liberties Union.
Travis Stearns, Ann Benson, Washington Defender Association, Seattle, WA, amicus counsel for American Immigration Lawyers Association and One America, Northwest Immigrant Rights Project, Washington Association of Criminal Defense Lawyers, Washington Defender Association.
James Morrissey Whisman, King County Prosecutor's Office, Seattle, WA, amicus counsel for Washington Association of Prosecuting Attorneys.
FAIRHURST, J.
¶ 1 The question presented is whether, in light of the United States Supreme Court's decision in Padilla v. Kentucky, ___ U.S. ___, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), a noncitizen criminal defendant can be denied the right to effective assistance of counsel when the defense attorney erroneously assures the defendant that the deportation consequence of a guilty plea can be mitigated.

I. FACTUAL AND PROCEDURAL HISTORY
¶ 2 Valentin Sandoval, a noncitizen permanent resident of the United States, was charged with rape in the second degree. The prosecutor offered, in exchange for a guilty plea, to reduce the charge to rape in the third degree. Sandoval conferred with his attorney and said that he did not want to plead guilty if the plea would result in his deportation. Sandoval's attorney recalls Sandoval as being "very concerned" that he would be held in jail after pleading guilty and subjected to deportation proceedings. Pers. Restraint Pet. (PRP), Ex. 1, at 2. Sandoval's counsel advised him to plead guilty: "I told Mr. Sandoval that he should accept the State's plea offer because he would not be immediately deported and that he would then have sufficient time to retain proper immigration counsel to ameliorate any potential immigration consequences of his guilty plea." Id. Sandoval explains, "I trusted my attorney to know that what he was telling me was the truth." Statement of Additional Grounds for Review at 1.
¶ 3 Sandoval followed his counsel's advice and pleaded guilty on October 3, 2006. The statement on plea of guilty, that Sandoval signed, contained a warning about immigration consequences: "If I am not a citizen of the United States, a plea of guilty to an offense punishable as a crime under state law is grounds for deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the *1018 United States." Clerk's Papers at 10. During a colloquy with the court, Sandoval affirmed that his counsel, with an interpreter's help, had reviewed the entire plea statement with Sandoval. After the original sentencing hearing was continued, Sandoval was sentenced on January 23, 2007 to the standard range of 6 to 12 months in jail, with credit for time served.
¶ 4 Before Sandoval was released from jail, the United States Customs and Border Protection put a "hold" on Sandoval that prevented him from being released from jail. Deportation proceedings against Sandoval then began. Sandoval now claims, "I would not have pleaded guilty to Rape in the Third Degree if I had known that this would happen to me." Statement of Additional Grounds for Review at 1.
¶ 5 Sandoval appealed, claiming his plea was not knowing, voluntary, or intelligent due to ineffective assistance of counsel, and he filed a concurrent PRP. The deportation proceedings were stayed. The Court of Appeals consolidated the appeal and the PRP, and in an unpublished opinion, affirmed the conviction and denied the PRP. State v. Sandoval, noted at 145 Wash.App. 1017, 2008 WL 2460282, at *1.
¶ 6 We granted Sandoval's petition for review. State v. Sandoval, 165 Wash.2d 1031, 203 P.3d 381 (2009). Subsequently, the United States Supreme Court decided Padilla. We requested and received additional briefing.

II. STANDARD OF REVIEW
¶ 7 Ordinarily, a personal restraint petitioner alleging constitutional error must show actual and substantial prejudice. See In re Pers. Restraint of Lord, 152 Wash.2d 182, 188, 94 P.3d 952 (2004). This actual and substantial prejudice standard does not apply when the petitioner has not had a prior opportunity to appeal the issue to a disinterested judge. See In re Pers. Restraint of Grantham, 168 Wash.2d 204, 214, 227 P.3d 285 (2010). However, if some other showing of prejudice is required by the law underlying the petitioner's claim of constitutional error, the petitioner must make the requisite showing of prejudice. Id. at 214-15, 227 P.3d 285.
¶ 8 Sandoval had to bring a PRP to meet his burden of proving ineffective assistance of counsel because his counsel's advice does not appear in the trial court record. See State v. McFarland, 127 Wash.2d 322, 335, 899 P.2d 1251 (1995) ("If a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition, which may be filed concurrently with the direct appeal."). Because of this unique procedural obstacle to Sandoval's ineffective assistance claim, he has not "already had an opportunity to appeal to a disinterested judge." Grantham, 168 Wash.2d at 214, 227 P.3d 285. Thus, Sandoval does not have to show actual and substantial prejudice; his burden is only to show that he is entitled to relief for one of the reasons listed in RAP 16.4(c). See Grantham, 168 Wash.2d at 214, 227 P.3d 285. Sandoval still has the burden of establishing the prejudice required for a claim of ineffective assistance of counsel based on an attorney's advice during the plea bargaining process. See Padilla, 130 S.Ct. at 1485; Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

III. ANALYSIS
¶ 9 The Sixth Amendment right to effective assistance of counsel encompasses the plea process. In re Pers. Restraint of Riley, 122 Wash.2d 772, 780, 863 P.2d 554 (1993); McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). Counsel's faulty advice can render the defendant's guilty plea involuntary or unintelligent. Hill, 474 U.S. at 56, 106 S.Ct. 366; McMann, 397 U.S. at 770-71, 90 S.Ct. 1441. To establish the plea was involuntary or unintelligent because of counsel's inadequate advice, the defendant must satisfy the familiar two-part Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), test for ineffective assistance claimsfirst, objectively unreasonable performance, and second, prejudice to the defendant. Ordinary due process analysis does not apply. Hill, 474 U.S. at 56-58, 106 S.Ct. 366.

*1019 A. Did the advice of Sandoval's attorney meet the constitutional standard of competence for advice about immigration consequences?
¶ 10 Before Padilla, many courts believed that the Sixth Amendment right to effective assistance of counsel did not include advice about the immigration consequences of a criminal conviction. See Padilla, 130 S.Ct. at 1481 n. 9. However, in Padilla, the United States Supreme Court rejected this limited conception of the right to counsel. Id. at 1481-82. The Court recognized that deportation is "intimately related to the criminal process" and that "recent changes in our immigration law have made removal nearly an automatic result for a broad class of noncitizen offenders." Id. at 1481. Because of deportation's "close connection to the criminal process," advice about deportation consequences falls within "the ambit of the Sixth Amendment right to counsel." Id. at 1482.
¶ 11 Padilla describes the advice that a constitutionally competent defense attorney is required to give about immigration consequences during the plea process. "Immigration law can be complex," as Padilla recognizes, and so the precise advice required depends on the clarity of the law. Id. at 1483. If the applicable immigration law "is truly clear" that an offense is deportable, the defense attorney must correctly advise the defendant that pleading guilty to a particular charge would lead to deportation. Id. If "the law is not succinct and straightforward," counsel must provide only a general warning that "pending criminal charges may carry a risk of adverse immigration consequences." Id. In other words, even if immigration law does not reveal clearly whether the offense is deportable, competent counsel informs the defendant that deportation is at least possible, along with exclusion, ineligibility for citizenship, and any other adverse immigration consequences. Padilla rejected the proposition that only affirmative misadvice about the deportation consequences of a guilty plea, but not the failure to give such advice, could constitute ineffective assistance of counsel. Id. at 1484.[1]
¶ 12 Padilla itself is an example of when the deportation consequence is "truly clear." Id. Jose Padilla pleaded guilty to transporting a significant amount of marijuana in his truck, an offense that was obviously deportable under 8 U.S.C. § 1227(a)(2)(B)(i):
Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of . . . relating to a controlled substance . . ., other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

(Emphasis added.) This statute is "succinct, clear, and explicit in defining the removal consequence for Padilla's conviction." Padilla, 130 S.Ct. at 1483. By simply "reading the text of the statute," Padilla's lawyer could determine that a plea of guilty would make Padilla eligible for removal. Id.
¶13 To assess whether Sandoval's counsel's advice to Sandoval meets the Padilla standard, we must first determine whether the relevant immigration law is truly clear about the deportation consequences. Under 8 U.S.C. § 1227(a)(2)(A)(iii), "[a]ny felon who is convicted of an aggravated felony at any time after admission is deportable." "Aggravated felony" is defined in 8 U.S.C. § 1101(a)(43)(A) to include "murder, rape, or sexual assault of a minor." The charges here, rape in the second degree and rape in the third degree, appear to be deportable offenses because they fit the definition of "aggravated felony." Sandoval's counsel had to take the extra step of reviewing the definition of "aggravated felony," whereas Padilla's counsel had to look only at the face of 8 U.S.C. § 1227(a)(2)(B)(i). Further, although determining whether a state crime is a *1020 "rape" under federal immigration law is not always a simple matter, the Ninth Circuit Court of Appeals interprets the term "rape" in 8 U.S.C. § 1101(a)(43)(A) "by `employing the ordinary, contemporary, and common meaning' of that word and then determin[ing] whether or not the conduct prohibited by [state law] falls within that common, everyday definition." Castro-Baez v. Reno, 217 F.3d 1057, 1059 (9th Cir.2000) (citation omitted) (quoting United States v. Baron-Medina, 187 F.3d 1144, 1146 (9th Cir.1999)). In this case, we think the law was straightforward enough for a constitutionally competent lawyer to conclude that a guilty plea to RCW 9A.44.060(1)(a) (rape in the third degree, lack of consent) would have subjected Sandoval to deportation. Therefore, Sandoval's counsel was required to correctly advise, or seek consultation to correctly advise, Sandoval of the deportation consequence.
¶14 The State and amicus Washington Association of Prosecuting Attorneys (WAPA) argue that Sandoval's counsel's advice was proper. From their perspective, counsel discussed the risk of deportation with Sandoval, and counsel appropriately relied on his prior experience to assess Sandoval's chances and recommend a mitigation strategy. Further, WAPA notes, counsel's assurance was limited to telling Sandoval that he would not be "immediately deported," PRP, exhibit 1, at 2, not that he would never be deported. The State and WAPA also argue that the guilty plea statement contained a warning about the immigration consequences of pleading guilty, as required by RCW 10.40.200,[2] and the judge confirmed in a colloquy that Sandoval reviewed the statement with his counsel. These arguments are unavailing for two principal reasons.
¶ 15 First, defense counsel's mitigation advice may not be couched with so much certainty that it negates the effect of the warnings required under Padilla. The required advice about immigration consequences would be a useless formality if, in the next breath, counsel could give the noncitizen defendant the impression that he or she should disregard what counsel just said about the risk of immigration consequences. Under Padilla, counsel can provide mitigation advice. However, counsel may not, as Sandoval's counsel did, assure the defendant that he or she certainly "would not" be deported when the offense is in fact deportable. That Sandoval was subjected to deportation proceedings several months later, and not "immediately" as his counsel promised, makes no difference. Sandoval's counsel's advice impermissibly left Sandoval the impression that deportation was a remote possibility.
¶ 16 The second reason that Sandoval's counsel's advice was unreasonable, contrary to the State and WAPA's argument, is that the guilty plea statement warnings required by RCW 10.40.200(2) cannot save the advice that counsel gave. In Padilla, the Commonwealth of Kentucky used a plea form that notifies defendants of a risk of immigration consequences, and the Court even cited RCW 10.40.200, noting the Washington statute provides a warning similar to Kentucky's. See 130 S.Ct. at 1486 n. 15. However, the Court found RCW 10.40.200 and other such warnings do not excuse defense attorneys from providing the requisite warnings. Rather, for the Court, these plea-form warnings underscored *1021 "how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation." Id. at 1486 (emphasis added). Despite the warning about immigration consequences on Kentucky's plea forms, the Court concluded that the advice of Padilla's lawyer was incompetent under the Sixth Amendment. The defendant was misadvised that he "`did not have to worry about immigration status since he had been in the country so long.'" Id. at 1478 (internal quotation marks omitted) (quoting Commonwealth v. Padilla, 253 S.W.3d 482, 483 (Ky.2008)).
¶ 17 The result is the same here. Just as Padilla's lawyer incorrectly dismissed the risks of deportation, Sandoval's counsel's categorical assurances nullified the constitutionally required advice about the deportation consequence of pleading guilty. We conclude, therefore, that Sandoval has proved the performance prong of Strickland.
¶ 18 We hold the performance of Sandoval's counsel during the plea process "fell below an objective standard of reasonableness," Strickland, 466 U.S. at 688, 104 S.Ct. 2052, and thus was constitutionally incompetent because his advice regarding the immigration consequences of Sandoval's plea impermissibly downplayed the risks.[3]

B. Did the advice of Sandoval's attorney prejudice Sandoval?
¶ 19 "In satisfying the prejudice prong, a defendant challenging a guilty plea must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Riley, 122 Wash.2d at 780-81, 863 P.2d 554 (citing Hill, 474 U.S. at 59, 106 S.Ct. 366); accord In re Pers. Restraint of Elmore, 162 Wash.2d 236, 254, 172 P.3d 335 (2007); State v. Oseguera Acevedo, 137 Wash.2d 179, 198-99, 970 P.2d 299 (1999). A "reasonable probability" exists if the defendant "convince[s] the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla, 130 S.Ct. at 1485. This standard of proof is "somewhat lower" than the common "preponderance of the evidence" standard. Strickland, 466 U.S. at 694, 104 S.Ct. 2052.
¶ 20 We conclude Sandoval meets this burden. Not only does Sandoval swear after-the-fact that he would have rejected the plea offer had he known the deportation consequence, but also Sandoval's counsel says that Sandoval was "very concerned" at the time about the risk of deportation. PRP, Ex. 1, at 2. Sandoval relied heavily on his lawyer's counsel, explaining that "I trusted my attorney to know that he was telling the truth." Statement of Additional Grounds for Review at 1.
¶ 21 We accept the State's argument that the disparity in punishment makes it less likely that Sandoval would have been rational in refusing the plea offer. According to the State, if Sandoval were convicted of second degree rape, RCW 9A.44.050, a class A felony, he faced a standard sentencing range of 78-102 month's imprisonment and a maximum of a life sentence. Third degree rape, however, subjected Sandoval to a standard sentencing range of 6-12 months.
*1022 ¶ 22 However, Sandoval had earned permanent residency and made this country his home. Although Sandoval would have risked a longer prison term by going to trial, the deportation consequence of his guilty plea is also "a particularly severe 'penalty.'" Padilla, 130 S.Ct. at 1481 (quoting Fong Yue Ting v. United States, 149 U.S. 698, 740, 13 S.Ct. 1016, 37 L.Ed. 905 (1893)). For criminal defendants, deportation no less than prison can mean "banishment or exile," Delgadillo v. Carmichael, 332 U.S. 388, 390-91, 68 S.Ct. 10, 92 L.Ed. 17 (1947), and "separation from their families," Padilla, 130 S.Ct. at 1484. Given the severity of the deportation consequence, we think Sandoval would have been rational to take his chances at trial. See Immigration & Naturalization Serv. v. St. Cyr, 533 U.S. 289, 322, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) ("There can be little doubt that, as a general matter, alien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions."). Therefore, Sandoval has proved that his counsel's unreasonable advice prejudiced him.

IV. CONCLUSION
¶ 23 We reverse the Court of Appeals, vacate Sandoval's conviction, and remand to the trial court for proceedings consistent with this opinion.
WE CONCUR: CHARLES W. JOHNSON, GERRY L. ALEXANDER, SUSAN OWENS, Justices, and RICHARD B. SANDERS, Justice Pro Tem.
J.M. JOHNSON, J. (concurring).
¶ 24 The United States Supreme Court has noted that where immigration "law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." Padilla v. Kentucky, ___ U.S. ___, 130 S.Ct. 1473, 1483, 176 L.Ed.2d 284 (2010) (emphasis added). If attorney Robert E. Schiffner would have advised Valentin Sandoval of the risk of deportation without adding his prediction that the federal government would not enforce immediate deportation, Schiffner's performance would have been objectively reasonable. Additionally, had the trial court specifically addressed the deportation provision in Sandoval's plea agreement, the record would not establish prejudice. However, because attorney Schiffner assured Sandoval of federal nonenforcement and the trial court did not specifically address the risk of immigration consequences, I must respectfully concur in this decision.
¶ 25 Prior to the United States Supreme Court's decision in Padilla, "`virtually all jurisdictions'including `eleven federal circuits, more than thirty states, and the District of Columbia'`[held] that defense counsel need not discuss with their clients the collateral consequences of a conviction,' including deportation." Id. at 1487 (Alito, J., concurring in the judgment) (quoting Gabriel J. Chin & Richard W. Holmes Jr., Effective Assistance of Counsel and the Consequences of Guilty Pleas, 87 CORNELL L.REV. 697, 699 (2002)). The United States Supreme Court departed from this consensus when the Padilla majority held "that counsel must inform her client whether his plea carries a risk of deportation." Id. at 1486. Importing the test from Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Court determined that Padilla's counsel failed to properly advise his client that he risked deportation by pleading guilty. Padilla, 130 S.Ct. at 1483. It concluded that such advice was objectively unreasonable in violation of the first prong of the Strickland analysis. Id. The Padilla majority distinguished between two types of immigration cases: (1) cases where the immigration consequences are "succinct and straightforward" and (2) cases where the consequences are "unclear or uncertain." Id. In "succinct and straightforward" cases like Padilla's, the attorney has an obligation to accurately advise his client of the known immigration consequences of a criminal conviction. Id. However, where the "deportation consequences of a particular plea are unclear or uncertain[,][t]he duty of the private practitioner. . . is more limited." Id. The United States Supreme Court then remanded the case for a determination whether Padilla could demonstrate *1023 prejudice sufficient to satisfy Strickland's second prong. Id. at 1483-84.
¶ 26 Along with the majority, I concede that, in light of Padilla, the Strickland analysis now applies to the advice a criminal defense attorney gives to his client regarding the deportation consequences of a guilty plea. Where I disagree is with the Court's flawed application of the Strickland analysis.

1. Objectively reasonable representation

¶ 27 While Schiffner's performance was objectively unreasonable, I disagree with the majority's analysis. The law concerning the deportation consequences of Sandoval's guilty plea is not clear, succinct, or straightforward. Where the law is not "succinct or straightforward," a criminal defense attorney only needs to advise his noncitizen client that his criminal charges may carry immigration consequences. Id. at 1483. Justice Alito's concurrence criticized the majority's distinction between "succinct or straightforward" law and "other situations." Id. at 1487 (Alito, J., concurring). He noted that, in the immigration context, the term "aggravated felony" raises several legal issues, setting potential traps for the unwary. See id. at 1488 (Alito, J., concurring) ("As has been widely acknowledged, determining whether a particular crime is an `aggravated felony' . . . is not an easy task."). In response to Justice Alito's criticisms, the Padilla majority indicated that Justice Alito's complex scenarios were not the "succinct and straightforward" cases that the Court envisioned its new rule would apply to. See id. at 1483 ("When the law is not succinct and straightforward (as it is in many of the scenarios posited by Justice ALITO), a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." (emphasis added)). Both the majority and concurring opinions in Padilla agreed that whether a crime constitutes an "aggravated felony" for purposes of immigration law is not an easy question.
¶ 28 While the United States Supreme Court considers it a difficult question whether a crime constitutes an "aggravated felony" under federal immigration law, the majority of this court disagrees. The majority concludes that the immigration consequences concerning Sandoval's conviction were "straightforward enough" to require precise advice from a competent criminal lawyer. Majority at 1019-20. The majority performs this "straightforward" analysis in three steps: (1) look up the relevant statute governing deportation consequences for an "aggravated felony"8 U.S.C. § 1227(a)(2)(A)(iii); (2) cross-reference this statute with a federal statute defining "aggravated felony"8 U.S.C. § 1101(a)(43)(A); and (3) consult Ninth Circuit case law as to whether Sandoval's conviction actually satisfies the statutory definition. Majority at 1019-20. This is hardly "straightforward." Additionally, this analysis fails to consider further complications that an attorney should consider before advising a noncitizen client. For example, when did the conviction occur? If the conviction occurred within the wrong time frame, it may not count. See Ledezma-Galicia v. Holder, ___ F.3d ___, 2010 WL 5174979 at *6 (9th Cir.2010) (holding that the deportation consequences under 8 U.S.C. § 1227(a)(2)(A)(iii) do not apply to "aggravated felony" convictions prior to 1988). Which state did the conviction occur in? The same crime that constitutes an "aggravated felony" under one state's statute might not under another's. Compare Rivera-Cuartas v. Holder, 605 F.3d 699, 701 (9th Cir.2010) (holding that a conviction for engaging in sexual conduct with a minor under Arizona Revised Statutes § 13-1405 does not constitute an "aggravated felony" under the Immigration and Nationality Act (INA)), with Yasay v. Holder, No. 08-74610, 368 Fed.Appx. 727, 729 (9th Cir. Feb. 23, 2010) (unpublished) (holding that a conviction for engaging in sexual conduct with a minor under Hawaii Revised Statutes § 707-732(1)(b) constitutes an "aggravated felony" under the INA). The federal circuits do not even agree on which crimes satisfy the federal definitions. Compare Silva v. Gonzales, 455 F.3d 26, 29 (1st Cir.2006) (holding that statutory rape is an "aggravated felony" under the INA), with Soto-Armenta v. Gonzales, No. 03-72404, 174 Fed.Appx. 386, 388 (9th Cir. Mar. 31, 2006) (unpublished) (holding that statutory rape is not an "aggravated felony" *1024 under the INA). In short, Schiffner would have to resolve complicated immigration law issues before directly advising Sandoval issues that were far from "straightforward" as the majority suggests.
¶ 29 It is not even clear that the majority gives the right answer to this question of immigration law. The majority relies on the Ninth Circuit's holding that a conviction for "rape" under California Penal Code § 261(a)(3) constitutes an "aggravated felony" for purposes of the INA, 8 U.S.C. § 1227(a)(2)(A)(iii). Majority at 1019-20 (citing Castro-Baez v. Reno, 217 F.3d 1057, 1059 (9th Cir.2000)). When considering whether a state conviction satisfies the INA's federal definitions, the Ninth Circuit takes a categorical approach. An offense qualifies as "an aggravated felony if and only if the 'full range of conduct' covered by it falls within the meaning of that term." United States v. Baron-Medina, 187 F.3d 1144, 1146 (9th Cir. 1999) (quoting United States v. Lomas, 30 F.3d 1191, 1193 (9th Cir.1994), overruled on other grounds by United States v. Rivera-Sanchez, 247 F.3d 905 (9th Cir.2001)). The Ninth Circuit looks "solely to the statutory definition of the crime, not to the name given to the offense or to the underlying circumstances of the predicate conviction." Id. The Ninth Circuit determined that all of the conduct proscribed in California Penal Code § 261(a)(3) constituted "rape" and thereby an "aggravated felony" under the INA. Castro-Baez, 217 F.3d at 1059. Of course, the Ninth Circuit's determination regarding a conviction for rape under Washington law might be entirely different. Unlike the California statute at issue in Castro-Baez, Washington's statute, RCW 9A.44.060(1)(a), does not enumerate circumstances that constitute lack of consent by the victim and requires that the victim clearly express nonconsent. Though the California and Washington statutes cover a great deal of similar criminal conduct, they are not coextensive. Quite simply, it is an open question in the Ninth Circuit whether a conviction under RCW 9A.44.060(1)(a) constitutes an "aggravated felony" under the INA.[1]
¶ 30 All of this stands in stark contrast to the "succinct, clear, and explicit" definition in the statute interpreted by the Padilla majority that "addresses not some broad classification of crimes but specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses." Padilla, 130 S.Ct. at 1483 (emphasis added). A requirement that all criminal defense attorneys master the intricacies of immigration law prior to providing legal aid to noncitizen defendants is clearly not required by Padilla or Strickland. Whether Sandoval's attorney possessed such mastery should not be dispositive regarding the effectiveness of his representation.
¶ 31 The majority also fails to properly emphasize the major defect in Schiffner's advicehis assurance of nonenforcement. Due to the complexities of immigration law, an attorney unsure of the deportation consequences of a criminal conviction should "say something about the possibility of deportation, even though it will affect the scope and nature of counsel's advice." Id. at 1483 n. 10. Had Schiffner simply advised Sandoval that his conviction carried a risk of deportation and urged him to seek out immigration counsel, his performance would not fail Strickland's first prong.
¶ 32 However, Schiffner admits he assured Sandoval that federal authorities would not enforce the immigration consequences of his conviction. He assured Sandoval that he could accept the State's plea offer and still have sufficient time to serve his sentence before seeking immigration counsel. Resp't's Suppl. Br., App. A., Aff. of Att'y. For this reason, Schiffner's advice fails Strickland's first prong.

2. Prejudice to Sandoval

¶ 33 I also do not agree with the majority's analysis of prejudice under Strickland. *1025 RCW 10.40.200 requires each written plea agreement to contain a warning about immigration consequences. Had the trial judge in this case specifically addressed the immigration warnings during the guilty plea colloquy, the record would not establish prejudice. In this case, the trial judge simply asked Sandoval if he had discussed the plea agreement with his attorney. Hr'g Tr. at 5-6. This particular colloquy was insufficient to cure any prejudice of the defense counsel's deficient performance. However, specifically discussing the statutory warnings in RCW 10.40.200 with a noncitizen criminal defendant would suffice.
¶ 34 The majority mistakenly analyzes the effect of statutory warnings when evaluating whether Schiffner gave objectively reasonable advice under the first prong of Strickland. Majority at 1020-21. Though the majority correctly notes that statutory warnings and the judge's guilty plea colloquy do not remove counsel's duties owed to the client, it incorrectly concludes that such warnings are irrelevant to a claim for ineffective assistance of counsel. These warnings are highly relevant to determining whether the client faced prejudice.
¶ 35 The majority compounds this error by erroneously citing Padilla's reference to RCW 10.40.200 as justification for its position. Majority at 1020-21. Padilla provides no support for the majority's dismissal of the statutory and judicial warnings' significance. The United States Supreme Court referenced RCW 10.40.200, along with numerous other state statutes, to help underscore "how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation." Padilla, 130 S.Ct. at 1486. Padilla did not reach a conclusion as to whether these warnings mitigate the prejudice a noncitizen defendant faces. Padilla expressly left the prejudice prong of the Strickland analysis to the state courts. Id. at 1483-84. Had Sandoval signed a plea agreement containing immigration warnings and expressly told a judge that he understood the warning regarding the immigration consequences of his conviction, I would find no prejudice under Strickland.

CONCLUSION
¶ 36 Schiffner properly warned Sandoval that there was a risk of deportation following his conviction and recommended that he seek immigration counsel. That is all that Padilla and Strickland require. Schiffner's performance became objectively unreasonable when he assured his client that federal immigration authorities would not enforce the law. Despite his deficient performance, the trial court could have cured the error by specifically addressing the immigration warnings mandated in RCW 10.40.200. Though the majority arrives at the correct conclusion in this case, I cannot join its flawed analysis. For these reasons, I respectfully concur.
STEPHENS, J. (concurring).
¶ 37 I concur in the result in this case but write separately to emphasize what I believe is the appropriate analysis under Padilla v. Kentucky, ___ U.S. ___, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010).
¶ 38 In Padilla, the United States Supreme Court rejected the distinction that other courts had recognized between failing to advise a noncitizen defendant of potential immigration consequences and affirmatively misadvising the defendant. Id. at 1481-82; see also id. at 1484 (noting there is no relevant difference between an act of commission and an act of omission in this context). This now-rejected distinction resonates in In re Personal Restraints of Yim, 139 Wash.2d 581, 989 P.2d 512 (1999), upon which the Court of Appeals in this case relied in dismissing Sandoval's personal restraint petition. Under Yim, defense counsel has no obligation to advise his client that a guilty plea might result in deportation because this is a mere collateral consequence of the plea. Id. at 588, 989 P.2d 512. However, "an affirmative misrepresentation to a defendant regarding the possibility of deportation might constitute a `manifest injustice' and, thus, provide a basis for setting aside a guilty plea. . . ." Id. The majority opinion appropriately recognizes Yim has been eclipsed by Padilla.
¶ 39 The focus after Padilla is on application of the ineffective assistance of counsel test from Strickland v. Washington, 466 U.S. *1026 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As to the first aspect of the Strickland test, Padilla distinguishes between two broad categories of cases in determining whether counsel's advice was objectively unreasonable: those in which immigration consequences are "succinct and straightforward" and those in which the consequences are "unclear or uncertain." Padilla, 130 S.Ct. at 1483. I tend to agree with Justice J.M. Johnson that this case falls into the latter category. The picture goes blurry, however, once the analysis moves beyond the threshold question. In order to avoid creating incentives for counsel to "remain silent on matters of great importance," id. at 1484, it is important that the Padilla analysis remain focused on the reasonableness standard of Strickland.
¶ 40 Rather than asking whether Sandoval's counsel affirmatively provided incorrect advice regarding immigration consequences, the Strickland test asks whether his advice, taken as a whole, was objectively reasonable under prevailing professional norms. Strickland, 466 U.S. at 688, 104 S.Ct. 2052. While I believe this is a close call, I agree that ineffective performance of counsel is established by the evidence submitted in support of the personal restraint petition. And, I agree that Sandoval has demonstrated the necessary prejudice. I do not, however, agree with any suggestion that a claim of ineffective assistance of counsel is established whenever defense counsel offers affirmative advice concerning immigration consequences that are unclear and that advice turns out to be wrong. In the short term, this would open the door to unsupported claims. In the long term, it would create an unfortunate incentive for defense counsel to remain silent rather than assist a noncitizen defendant seeking to navigate the complexities of immigration law.
WE CONCUR: BARBARA A. MADSEN, Chief Justice, and TOM CHAMBERS, Justice.
NOTES
[1] In analyzing Sandoval's case, the Court of Appeals relied on In re Personal Restraints of Yim, 139 Wash.2d 581, 587-89, 989 P.2d 512 (1999), which held that because deportation was merely a collateral consequence of a guilty plea, anything short of an affirmative misrepresentation by counsel of the plea's deportation consequences could not support the plea's withdrawal. Sandoval, 145 Wash.App. 1017, 2008 WL 2460282, at *2. Padilla has superseded Yim's analysis of how counsel's advice about deportation consequences (or lack thereof) affects the validity of a guilty plea.
[2] This statute provides, in relevant part:

Prior to acceptance of a plea of guilty to any offense punishable as a crime under state law, except offenses designated as infractions under state law, the court shall determine that the defendant has been advised of the following potential consequences of conviction for a defendant who is not a citizen of the United States: Deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. A defendant signing a guilty plea statement containing the advisement required by this subsection shall be presumed to have received the required advisement. If, after September 1, 1983, the defendant has not been advised as required by this section and the defendant shows that conviction of the offense to which the defendant pleaded guilty may have the consequences for the defendant of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States, the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty and enter a plea of not guilty. Absent a written acknowledgement by the defendant of the advisement required by this subsection, the defendant shall be presumed not to have received the required advisement.
RCW 10.40.200(2).
[3] Amici curiae Washington Defender Association, Washington Association of Criminal Defense Lawyers, Northwest Immigrant Rights Project, American Immigration Lawyers Association, and One America invite us to hold the Sixth Amendment requires a defense attorney to conduct a four-step process when handling a noncitizen criminal defendant's case: (1) investigate the facts; (2) discuss the defendant's priorities; (3) research the immigration consequences of the charged crime and the plea alternatives, and advise the defendant accordingly; and (4) defend the case in light of the client's interests and the surrounding circumstances. We decline amici's invitation, as their argument goes beyond the scope of this case. Sandoval's ineffective assistance claim is focused narrowly on the advice that he received about the deportation consequence of pleading guilty to rape in the third degree. Of course, Padilla recognizes that "bringing deportation consequences into this [plea] process" can give defense counsel the information necessary to "satisfy the interests" of the client, perhaps by "plea bargain[ing] creatively with the prosecutor in order to craft a conviction and sentence that reduce the likelihood of deportation." 130 S.Ct. at 1486. However, this case does not concern Sandoval's counsel's negotiations with the prosecutor, his investigation of the facts, his analysis of a complicated immigration statute (we have concluded the statute was clear), or any other matter addressed by amici's arguments. We will consider these issues if and when they are squarely presented.
[1] Though an open question, it seems likely that a conviction under RCW 9A.44.060(1)(a) constitutes an "aggravated felony" under the INA, given the Ninth Circuit's determination that a conviction under the same Washington statute constitutes an "aggravated felony" under the federal sentencing guidelines. See United States v. Yanez Saucedo, 295 F.3d 991, 996 (9th Cir. 2002).