IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  49048-0-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| JOSE RAMOS-CURIEL, | |
| Appellant. | |

BJORGEN, C.J. — Jose Ramos-Curiel appeals the denial of his motion to withdraw his guilty plea to violation of a domestic violence no contact order.  He contends that he is entitled to withdraw his guilty plea because (1) his defense counsel was ineffective for failing to accurately advise him about the immigration consequences of pleading guilty to the crime and (2) the trial court misinformed him about the immigration consequences of pleading guilty.  We affirm.

FACTS

On April 24, 2008, the State charged Ramos-Curiel with unlawful possession of a controlled substance and violation of a domestic violence no contact order.  Ramos-Curiel pled guilty to the charges.  Ramos-Curiel's signed statement on plea of guilty form provided that, in considering the consequences of his guilty plea, he understood that:

> If I am not a citizen of the United States, a plea of guilty to an offense punishable as a crime under state law is grounds for deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

Clerk's Papers (CP) at 6. In addition, the following exchange took place at Ramos-Curiel's October 14, 2008 plea hearing:

> [Trial court]: Do you understand—are you an American citizen?
>
> [Ramos-Curiel]: No.
>
> [Trial court]: Do you understand if you enter a guilty plea to a felony, you may be deported?
>
> [Ramos-Curiel]: Yes, I understand.

Report of Proceedings (RP) at 4. The trial court accepted Ramos-Curiel's guilty pleas and sentenced him to 20 days of incarceration.

On March 16, 2016 Ramos-Curiel filed a CrR 7.8(b) motion to withdraw his guilty pleas. On May 16, the trial court held an evidentiary hearing on Ramos-Curiel's withdrawal motion. At the hearing, Ramos-Curiel's former defense attorney, Thomas Ladouceur, testified that it was his standard practice to review every applicable provision contained in a guilty plea form with his clients. Although Ladouceur testified that he had no independent recollection of reviewing the guilty plea form's immigration provision with Ramos-Curiel, he stated his belief that he would have done so based on his standard practice.

On May 27, the trial court denied Ramos-Curiel's withdrawal motion and entered the following findings of fact and conclusions of law:

> Based on the files and records herein, the testimony, argument of counsel, the Court finds the following:

1.      The parties stipulate that this Motion to Withdraw Guilty Plea is timely and properly before this Court.

2.      That on October 14, 2008, the Defendant did plead guilty to the charges of Count I Violation Uniform Controlled Substance Act (possession of cocaine) and Count II Violation of Domestic Violence No Contact Order.

3.      At that time the Defendant was represented by the attorney Tom Ladouceur.

4.      That paragraph 4(i) of the Statement of Defendant on Plea of Guilty signed and entered by the Defendant states: "If I am not a citizen of the United States, a plea of guilty to an offense punishable as a crime under state law is grounds for deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."

5.      At the time of the guilty plea, the Defendant was not a US Citizen. Under the immigration law at the time a plea of guilty by the Defendant was made to the offenses stated, the Defendant would be deported.

6.      Mr. Ladouceur went through the language of paragraph 4(i) of the Statement of Defendant on Plea of Guilty with the Defendant. Mr. Ladouceur does not recall whether he made any contact with an immigration attorney to determine the applicable law specific to the defendant pleading guilty as herein and then subsequently advise the Defendant of the information.

7.      Mr. Ladouceur did properly advise the Defendant that the crimes he was pleading guilty to were deportable offenses. Mr. Ladouceur did not give wrong advice to the Defendant regarding the offenses.

8.      The judge taking the plea also reviewed the language of paragraph 4(i) of the Statement of Defendant on Plea of Guilty with the Defendant. The judge made the finding the "defendant's plea of guilty to be knowingly, intelligently and voluntarily made. . ."

9.      That based on the law that applies to the time of the entry of the plea of guilty by the Defendant, Mr. Ladouceur gave appropriate legal advice and therefore did not provide ineffective legal assistance. Further, the language of the plea form and the colloquy of the judge were appropriate.

Thus, the Court concludes:

1.)     The Motion to Withdraw Guilty Plea has been timely made; and

3

2.)     Defendant did make a knowing, intelligent and voluntary plea to the charges of the above-entitled case.

Therefore, the Motion to Withdraw Guilty Plea made pursuant to CrR[] 7.8(b)(5) is denied.

Clerk's Papers (CP) at 132-34. Ramos-Curiel appeals from the trial court's ruling denying his withdrawal motion.[1]

## ANALYSIS

Ramos-Curiel contends that the trial court erred in denying his CrR 7.8(b) motion to withdraw guilty plea because (1) his defense counsel provided ineffective assistance during plea negotiations by failing to advise him that his guilty plea to violation of a domestic violence no contact order would result in certain deportation, and (2) the trial court misled him during the plea colloquy by asking him whether he understood that he "may be deported" by pleading guilty, rendering his guilty plea involuntary. RP (Oct. 14, 2008) at 4. We disagree with each contention.

### I. STANDARD OF REVIEW

A defendant is permitted to withdraw a guilty plea under CrR 4.2(f) "whenever it appears that the withdrawal is necessary to correct a manifest injustice." Additionally, CrR 7.8 governs postjudgment motions to withdraw a guilty plea and provides in relevant part:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc. On motion and upon such terms as are just, the court may relieve a party from a final judgment, order, or proceeding for the following reasons:
. . . .

---

[1] On February 27, 2017, while his appeal was pending, the trial court entered an order vacating Ramos-Curiel's unlawful possession of a controlled substance conviction and dismissed the charge with prejudice. On March 23, we granted Ramos-Curiel's RAP 7.2(e) motion to give effect to the trial court's February 27 order and to withdraw his argument with regard to the vacated conviction.

(5) Any other reason justifying relief from the operation of the judgment.

A defendant seeking to withdraw a guilty plea in a postjudgment motion must meet the requirements for a plea withdrawal under both CrR 4.2(f) and CrR 7.8. *State v. Lamb*, 175 Wn.2d 121, 128, 285 P.3d 27 (2012). In other words, to succeed on his postjudgment motion to withdraw his guilty plea, Ramos-Curiel would have had to demonstrate *both* (1) that withdrawal of his plea was necessary to correct a manifest injustice *and* (2) that relief from the final judgment was justified by one of the reasons enumerated in CrR 7.8(b). Ramos-Curiel may demonstrate a manifest injustice warranting withdrawal of his guilty plea if he shows that he received ineffective assistance of counsel or that his plea was involuntary. *State v. Pugh*, 153 Wn. App. 569, 577, 222 P.3d 821 (2009) (citing *State v. Taylor*, 83 Wn.2d 594, 597, 521 P.2d 699 (1974)). A showing that Ramos-Curiel received ineffective assistance of counsel or that his plea was entered involuntarily would also satisfy the criteria for withdrawal of his guilty plea under CrR 7.8(b)(5). *See, e.g.*, *State v. Martinez*, 161 Wn. App. 436, 441, 253 P.3d 445 (2011), *appeal after remand*, 189 Wn. App. 1050 (2015).

We generally review a trial court's denial of a motion to withdraw a guilty plea for an abuse of discretion. *Martinez*, 161 Wn. App. at 440. However, when the trial court bases its otherwise discretionary decision solely on application of the law to particular facts, the issue is one of law, which we review de novo. *State v. Martinez-Leon*, 174 Wn. App. 753, 759, 300 P.3d 481 (2013). Additionally, where a trial court weighs evidence following a CrR 7.8 hearing, we review its findings of fact for substantial evidence and its conclusions of law de novo. *State v. Schwab*, 141 Wn. App. 85, 91, 167 P.3d 1225 (2007).

Ramos-Curiel assigns error to the trial court's findings of fact 7 and 9, but only to the extent that they contain the legal conclusion that his defense counsel had accurately advised him of the immigration consequences of pleading guilty to violation of a domestic violence no contact order. A conclusion of law erroneously described as a finding of fact is reviewed as a conclusion of law. *Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986). Accordingly, our review of this issue is de novo.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Ineffective assistance of counsel can render a plea involuntary. *State v. Sandoval*, 171 Wn.2d 163, 169, 249 P.3d 1015 (2011). To prevail on his claim that his counsel was constitutionally ineffective, Ramos-Curiel must demonstrate that (1) defense counsel's performance was deficient and (2) the deficient performance resulted in prejudice. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). If Ramos-Curiel fails to demonstrate either prong, we need not inquire further. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

A constitutionally competent defense attorney must advise a defendant of the immigration consequences of entering into a guilty plea. *Padilla v. Kentucky*, 559 U.S. 356, 367, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). In *Sandoval*, our Supreme Court held that "[i]f the applicable immigration law 'is truly clear' that an offense is deportable, the defense attorney must correctly advise the defendant that pleading guilty to a particular charge would lead to deportation." 171 Wn.2d at 170 (quoting *Padilla*, 559 U.S. at 369). However, "[i]f 'the law is not succinct and straightforward,' counsel must provide only a general warning that 'pending

6

criminal charges may carry a risk of adverse immigration consequences.'" *Sandoval*, 171 Wn.2d at 170 (quoting *Padilla*, 559 U.S. at 369).

We briefly discuss the facts underlying *Padilla* and *Sandoval*, as they illustrate the relation between the clarity of immigration law and a defense counsel's constitutionally required immigration advice during plea negotiations. In *Padilla*, the defendant pled guilty to transporting a significant amount of marijuana in his truck—an obviously deportable offense under 8 U.S.C. section 1227(a)(2)(B)(i):

> "Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation . . . relating to a controlled substance, . . . other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable."

559 U.S. at 359, 368 (quoting 8 U.S.C. § 1227(a)(2)(B)(i)). The *Padilla* Court determined that this statutory provision was "succinct, clear, and explicit in defining the removal consequence for Padilla's conviction." *Padilla*, 559 U.S. at 368. By simply "reading the text of the statute," Padilla's defense counsel could have determined that a guilty plea would subject the defendant to deportation. *Padilla*, 559 U.S. at 368. Defense counsel was thus ineffective for misadvising Padilla that he would not have to worry about immigration status because he had been in the country so long. *Padilla*, 559 U.S. at 368-69.

Similarly, in *Sandoval* defense counsel advised the defendant to "accept the State's plea offer [to third degree rape] because he would not be immediately deported and that he would then have sufficient time to retain proper immigration counsel to ameliorate any potential immigration consequences of his guilty plea." *Sandoval*, 171 Wn.2d at 167. Our Supreme Court concluded that defense counsel performed deficiently by incorrectly dismissing the defendant's risk of deportation and not informing the defendant that third degree rape equated to an

"aggravated felony" under federal immigration law, which subjected him to deportation. *Sandoval*, 171 Wn.2d at 171.

Here, unlike *Padilla* and *Sandoval*, it was not "truly clear" that deportation would follow Ramos-Curiel's guilty plea to violation of a domestic violence no contact order. The deportation provision applicable to Ramos-Curiel's violation of a domestic violence no contact order conviction states:

**Violators of protection orders**

Any alien who at any time after admission is enjoined under a protection order issued by a court and whom the court determines has engaged in conduct that violates the portion of a protection order that involves protection against credible threats of violence, repeated harassment, or bodily injury to the person or persons for whom the protection order was issued is deportable. For purposes of this clause, the term "protection order" means any injunction issued for the purpose of preventing violent or threatening acts of domestic violence, including temporary or final orders issued by civil or criminal courts (other than support or child custody orders or provisions) whether obtained by filing an independent action or as a pendente lite order in another proceeding.

8 U.S.C. § 1227(a)(2)(E)(ii).

8 U.S.C. section 1227(a)(2) lists numerous categories of criminal offenses that would subject a person who is not a United States citizen to deportation. Subsection (a)(2)(E)(ii), quoted above, is one of only three provisions that is not framed in terms of a criminal conviction. *Garcia-Hernandez v. Boente*, 847 F.3d 869, 871 (7th Cir. 2017). In other words, the fact that Ramos-Curiel was convicted of a statute prohibiting contact with a protected party, alone, would not necessarily subject him to certain deportation under 8 U.S.C. section 1227(a)(2)(E)(ii).

Instead, under at least the Ninth Circuit's view, an immigration court would first need to determine under a "categorical approach" whether the statute Ramos-Curiel had pled guilty to violating, former RCW 26.50.110 (2007), included the full range of conduct covered by 8 U.S.C.

section 1227(a)(2)(E)(ii). *Alanis-Alvarado v. Holder*, 558 F.3d 833, 836 (9th Cir. 2008) (quoting

*Kawashima v. Mukasey*, 530 F.3d 111, 1116 (9th Cir. 2008), *withdrawn and superseded by*

*Kawashima v Holder*, 615 F.3d 1043 (9th Cir. 2010)). If the immigration court determined that

the range of protection orders that could be issued under former RCW 26.50.110 was broader

than the scope of 8 U.S.C. section 1227(a)(2)(E)(ii), it would then employ the "'modified

categorical approach,'" requiring it to

> "conduct a limited examination of the documents in the record of conviction . . .
> [to] determine whether there is sufficient evidence to conclude that the alien was
> convicted of the elements of the generically defined crime even though his or her
> statute of conviction was facially overinclusive."

*Alanis-Alvarado*, 558 F.3d at 836 (quoting *Kawashima*, 530 F.3d at 1116).

In contrast to the Ninth Circuit in *Alanis-Alvarado*, the Seventh Circuit in *Garcia-*

*Hernandez* held that neither the "categorical approach" nor the "modified categorical approach"

controls whether a non-United States citizen's conduct subjected him or her to deportation under

8 U.S.C. section 1227(a)(2)(E)(ii). The Court stated:

> The text of (E)(ii) does not depend on a criminal conviction but on what a court
> "determines" about the alien's conduct. Based on that significant textual difference
> between (E)(ii) and other provisions, we find that neither the categorical approach
> nor the modified categorical approach controls this case. What matters is simply
> what the state court "determined" about Garcia-Hernandez's violation of the
> protection order.
>
> The key language, "the court determines," does not require a conviction of a
> particular kind or the categorical approach at all. What matters is what the court
> "determines". . . . If a court "determines" that the alien has engaged in conduct
> that violates a portion of the order that "involves protection against credible threats
> of violence, repeated harassment, or bodily injury," that is enough for purposes of
> (E)(ii).

*Garcia-Hernandez*, 847 F.3d at 872.

As the differing analyses undertaken by the Seventh and Ninth Circuit Courts of Appeal illustrate, the immigration consequences of pleading guilty to violation of a domestic violence no contact order are complex and not easily determined by simply reading the text of 8 U.S.C. section 1227(a)(2)(E)(ii). Rather, determining the immigration consequences of Ramos-Curiel's guilty plea to violation of a domestic violence no contact order required defense counsel to look beyond the text of subsection (a)(2)(E)(ii), ascertain the proper mode of analysis in light of conflicting federal circuit court opinions, and apply the proper analysis to the circumstances of Ramos-Curiel's case. Even after making such a determination, counsel could not be certain that Ramos-Curiel would be deported as a result of his violation of a domestic violence no contact order, since an immigration court would be required to make certain factual determinations about the nature of the no contact order violation under either the modified categorical approach of the Ninth Circuit or the analysis employed by the Seventh Circuit.

We need not decide the extent to which defense counsel was required to examine the circumstances of Ramos-Curiel's charges to determine whether pleading guilty would satisfy a specific ground for deportation under 8 U.S.C. section 1227(a)(2)(E)(ii). Although Ramos-Curiel does argue that his trial attorney failed in his duty to research and correctly inform him of the immigration consequences of pleading guilty, he does not argue that any feature of the charges or likely evidence would satisfy the specific grounds in 8 U.S.C. section 1227(a)(2)(E)(ii).

Through his signed statement on plea of guilty, Ramos-Curiel was advised that his plea was "grounds for deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." CP at 6. In light of the complexities

10

just discussed and the fact that conviction for a violation of a domestic violence no contact order does not necessarily result in deportation, this advisement and defense counsel's review of it with Ramos-Curiel together was constitutionally sufficient under the case law examined above.

Accordingly, Ramos-Curiel fails to demonstrate that the trial court erred by concluding that defense counsel had accurately advised him of the immigration consequences of pleading guilty to violation of a domestic violence no contact order. With that, findings of fact 7 and 9, properly considered as conclusions of law, are upheld, and Ramos-Curiel has not shown that defense counsel's performance was deficient. Thus, his claim of ineffective assistance of counsel fails.[2]

### III. TRIAL COURT DID NOT MISLEAD RAMOS-CURIEL

Next, Ramos-Curiel appears to argue that the trial court misled him by asking at the plea hearing whether he understood that he "*may* be deported" as a result of pleading guilty, rather than asking whether he understood that he *would* be deported. RP at 4 (emphasis added). We disagree.

First, it appears that the trial court's statement at issue referred only to Ramos-Curiel's charge of unlawful possession of a controlled substance, which we do not address in this appeal by Ramos-Curiel's request. Ramos-Curiel's violation of a domestic violence no contact order

---

[2] Ramos-Curiel further argues that defense counsel was ineffective for not informing him that his plea made him ineligible for cancellation of removal and reentry to the United States under 8 U.S.C. section 1229b(b). However, these consequences would arise for Ramos-Curiel under the statute only if he were inadmissible or deportable. 8 U.S.C. § 1229b(b)(1). As discussed above, at the time of his plea it was uncertain whether it would make him deportable. Thus, the advisement that the plea was "grounds for deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States," was adequate warning of the potential future consequences. CP at 6.

No. 49048-0-II

was charged and pled as a gross misdemeanor, and the trial court's question in full reads, "Do you understand if you enter a guilty plea to a *felony*, you may be deported?" RP at 4 (emphasis added). Second, even if the trial court had referred to the violation of a domestic violence no contact order charge, its question was appropriate given the uncertainty that deportation would follow a conviction for that charge and the proper advisement given in the plea of guilty. The trial court did not mislead the defendant about the immigration consequences of his plea.

CONCLUSION

We affirm the trial court's denial of Ramos-Curiel's CrR 7.8 motion to withdraw his guilty plea to violation of a domestic violence no contact order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, C.J.

BJORGEN, C.J.

We concur:

Worswick, J.

WORSWICK, J.

Lee, J.

LEE, J.

12