# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION THREE

| | | |
|---|---|---|
| In re the Petition for Relief from Personal Restraint of: | ) ) ) | No. 30150-8-III (consolidated with |
| JUAN PEDRO RAMOS, | ) ) | No. 30766-2-III) |
| Petitioner. | ) ) ) | |
| STATE OF WASHINGTON, | ) ) ) | ORDER DENYING MOTION FOR RECONSIDERATION AND |
| Respondent, | ) ) | GRANTING MOTION TO PUBLISH |
| v. | ) ) | |
| JUAN PEDRO RAMOS, | ) ) | |
| Appellant. | ) | |

The Court has considered appellant's motion for reconsideration and the appellant's motion to publish the opinion of May 8, 2014, and the record and file herein, and is of the opinion the motion for reconsideration should be denied and the motion to publish should be granted. Therefore,

IT IS ORDERED the motion for reconsideration of this court's decision of May 8, 2014, is denied.

IT IS FURTHER ORDERED the motion to publish is granted. The opinion filed by the court on May 8, 2014 shall be modified on page 1 to designate it is a published opinion and on page 15 by deletion of the following language:

No. 30150-8-III consol. w/30766-2-III
*In re Pers. Restraint of Juan Pedro Ramos; State v. Ramos*


A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record pursuant to RCW 2.06.040.

DATED: June 12, 2014

PANEL: Judges Brown, Siddoway, Fearing

FOR THE COURT:

_____
LAUREL H. SIDDOWAY
CHIEF JUDGE

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Petition for Relief from Personal Restraint of: | ) ) ) | No. 30150-8-III (consolidated with No. 30766-2-III) |
| JUAN PEDRO RAMOS, | ) ) | |
| Petitioner, | ) ) ) | UNPUBLISHED OPINION |
| | ) ) | |
| STATE OF WASHINGTON | ) ) | |
| Respondent, | ) ) | |
| v. | ) ) | |
| JUAN PEDRO RAMOS, | ) ) | |
| Appellant. | ) | |

FEARING, J. — We once again address the ramifications of *Padilla v. Kentucky*,

559 U.S. 356 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). In 1997, noncitizen Juan Pedro

Ramos pled guilty to the crime of first degree theft. Through an appeal and a personal

restraint petition, Ramos seeks to vacate the guilty plea, claiming his criminal defense

attorney failed to inform him that the crime was a deportable offense. We rule that

Ramos did not suffer from ineffective assistance of counsel, since the immigration

consequences of his plea were not clear and he was warned of possible deportation. We deny the plea vacation.

## FACTS

Juan Pedro Ramos is not a United States citizen, although his parents, on his behalf, applied for a green card in 1992. On December 26, 1996, the State of Washington charged Ramos with first degree theft. The State alleged Ramos and two others planned to steal 23 cars, valued at over $690,000, from a dealership. The court appointed attorney Rem Ryals to represent him.

On January 21, 1997, Juan Pedro Ramos pled guilty to first degree theft. In the signed statement of defendant on plea of guilty, Ramos acknowledged that his guilty plea could affect his immigration status. Paragraph 6(h) of the guilty plea statement provided:

> If I am not a citizen of the United States, a plea of guilty to an offense punishable as a crime under state law is grounds for deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.
> . . . .

Paragraph 12 of the guilty plea statement provided:

> My lawyer has explained to me, and we have fully discussed, all of the above paragraphs. I understand them all. I have been given a copy of this "Statement of Defendant on Plea of Guilty." I have no further questions to ask the judge.

Clerk's Papers (CP) at 52, 54.

At a plea hearing, the court informed Juan Pedro Ramos that he was giving up

2

various constitutional rights and explained, "If you're not a citizen of the United States, you'll face deportation upon the entry of a finding of guilty." Report of Proceedings (RP) at 3 (Jan. 21, 1997). Ramos indicated he understood.

Juan Pedro Ramos was 18 years old when arrested for the theft. He now testifies that he got "off to a bad start" when younger. CP at 13. Alas, he "was young and arrogant and wasn't making very good choices about what to do with [his] life." CP at 13.

A week after he pled guilty in 1997, a Franklin County Superior Court sentenced Juan Pedro Ramos to 45 days in jail, and fined him $1,029.35. After he was convicted, Juan Pedro Ramos' mother stopped the green card application process out of fear that her son would be deported.

In January 2011, Juan Pedro Ramos contacted a lawyer to inquire about his immigration status. Ramos claims he then discovered that his conviction required he be deported. To date, United States Custom and Border Protection has not sought to deport Ramos.

Juan Pedro Ramos now asserts that his attorney, Rem Ryals, never inquired about his immigration status. Ramos further claims he was not informed, at the time of his plea, about certain deportation as a result of entering the guilty plea. In an affidavit, Ramos testifies his lawyer never told him that if he pled guilty to the charges that he

would have no chance to remain in the United States. If he had been told of the immigration consequences, he would not have pled guilty but would have found a lawyer who would explain to him how he might avoid deportation by possibly pleading guilty to another crime. In a second affidavit, Ramos testifies that, during the court hearing when he pled guilty, he learned of a chance he would be deported. He learned of the possibility when reviewing papers with his counsel Rem Ryals before he appeared before the judge.

In April, Juan Ramos filed, in superior court, a motion to vacate his guilty plea. Noted veteran criminal defense attorney, James Egan, signed an affidavit swearing that attorney Ryals' practice was simply to read the immigration warnings to his clients. Rem Ryals, an experienced criminal defense attorney, is deceased.

Ramos supported his assertion that his conviction subjects him to mandatory deportation with an affidavit from prominent veteran immigration attorney, Thomas Roach. Roach claims Ramos is subject to mandatory deportation under 8 U.S.C. § 1101(a)(43)(M)(i), which requires immediate deportation for an "aggravated felony" which includes "[any crime involving] fraud or deceit in which the loss to the victim exceeds $10,000." Attorney Roach does not explain how he concludes Ramos' conduct was fraudulent or deceitful, nor does he cite any case in support of this legal opinion.

The superior court found the motion to vacate the plea time barred and transferred it to this court for consideration as a personal restraint petition (PRP) under

4

CrR 7.8(c)(2). While the PRP was pending, Juan Pedro Ramos filed a notice of appeal from the 1997 judgment and sentence, with an accompanying motion and affidavit for late filing of direct appeal under RAP 18.8(b). The Court of Appeals commissioner found Ramos' appeal timely because the sentencing court did not inform him of his appeal rights at the time of his plea. We consolidated Ramos' direct appeal with his personal restraint petition.

## LAW AND ANALYSIS

### Personal Restraint Petition—Appeal

A personal restraint petition and an appeal from the 1997 prosecution have both advantages and disadvantages to Juan Ramos. In an appeal, Ramos may assert the benefits afforded by *Padilla* since his conviction is not final, but he may not bring new evidence to this court, such as the affidavits of counsel Egan and Roach. *See Chaidez v. United States*, 568 U.S. __, 133 S. Ct. 1103, 185 L. Ed. 2d 149 (2013); *State v. Sandoval*, 171 Wn.2d 163, 168, 249 P.3d 1015 (2011). Although Juan Pedro Ramos may not bring to this court new evidence, such as the affidavits of counsel Egan and Roach, in his appeal, he may supply new evidence in his personal restraint petition. *Sandoval*, 171 Wn.2d at 168; *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

Understandably, Juan Pedro Ramos wishes the best of both worlds and the advantages of and no disadvantages from both proceedings. Equally understandably, the

5

No. 30150-8-III consol. w/30766-2-III
*In re Pers. Restraint of Juan Pedro Ramos; State v. Ramos*

State cries foul and asks that we analyze the appeal separate from the personal restraint petition. We grant Ramos his wish.

The Washington State Supreme Court has impliedly rejected the constrained approach the State urges this court to adopt. *Sandoval*, 171 Wn.2d at 169. In *Sandoval*, the court explained, if a "defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition, which may be filed concurrently with the direct appeal." *Sandoval*, 171 Wn.2d at 169 (quoting *McFarland*, 127 Wn.2d at 335). Therefore, this court may consider the affidavits Ramos filed and apply *Padilla* to Ramos' circumstances.

Ineffective Assistance of Counsel

The underlying and critical issue before us is whether Juan Pedro Ramos may vacate his 1997 guilty plea for first degree theft, because of his defense attorney's purported failure to warn him of the immigration consequences of his plea. To establish ineffective assistance of counsel, a defendant must satisfy a two part test (1) that his or her counsel's assistance was objectively unreasonable and (2) that as a result of counsel's deficient assistance, he or she suffered prejudice. *Strickland v. Washington*, 466 U.S. 668, 690, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To demonstrate the first prong— deficient performance—a reviewing court "judge[s] the reasonableness of counsel's

6

challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. The appellate court will presume counsel was effective. *State v. Gomez Cervantes*, 169 Wn. App. 428, 434, 282 P.3d 98 (2012).

The Sixth Amendment right to effective assistance of counsel encompasses the plea process. *Sandoval*, 171 Wn.2d at 169 (citing *In re Pers. Restraint of Riley*, 122 Wn.2d 772, 780, 863 P.2d 554 (1993)); *McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970). Faulty advice of counsel may render the defendant's guilty plea involuntary or unintelligent. *Sandoval*, 171 Wn.2d at 169 (citing *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985); *McMann*, 397 U.S. at 770-71). To establish that the plea was involuntary or unintelligent due to counsel's inadequate advice, the defendant must show under the test in *Strickland* that his attorney's performance was objectively unreasonable and that he was prejudiced by the deficiency. *Sandoval*, 171 Wn.2d at 169.

Prior to *Padilla*, deportation was considered to be a collateral consequence under Washington law and anything short of an affirmative misrepresentation by counsel of the plea's deportation consequences could not support a plea withdrawal. *Sandoval*, 171 Wn.2d at 170 n.1 (citing *In re Pers. Restraint of Yim*, 139 Wn.2d 581, 587-89, 989 P.2d 512 (1999)). *Padilla* explicitly rejected the proposition that only affirmative misadvice about deportation consequences of the plea, and not failure to give such advice, could

7

constitute ineffective assistance of counsel. *Padilla*, 559 U.S. at 369-74. *Padilla* also emphasized that for "at least the past 15 years, professional norms have generally imposed an obligation on counsel to provide advice on the deportation consequences of a client's plea." *Id.* at 372.

In *Padilla*, the Supreme Court stated that because of deportation's "close connection" to the criminal process, advice about deportation consequences falls within "the ambit of the Sixth Amendment right to counsel." *Padilla*, 559 U.S. at 366. *Padilla* explained that because "[i]mmigration law can be complex," the precise advice a constitutionally effective counselor provides, depends on the clarity of the law. *Padilla*, 559 U.S. at 369. If the applicable immigration law "is truly clear" that an offense is deportable, defense counsel must correctly advise the defendant that pleading guilty to that particular charge would lead to deportation. *Padilla*, 559 U.S. at 369. If "the law is not succinct and straightforward," counsel must provide only a general warning that "pending criminal charges may carry a risk of adverse immigration consequences." *Padilla*, 559 U.S. at 369.

To assess whether Rem Ryals' advice failed to comport with the *Padilla* standard, the court must determine whether the relevant immigration law was "truly clear" that the offense was deportable. *See Sandoval*, 171 Wn.2d at 169-70. *Padilla* and *Sandoval* provide some guidance for when immigration consequences are clear.

8

In *Padilla*, the defendant pled guilty to transporting a significant amount of marijuana in his truck—a deportable offense under 8 U.S.C. § 1227(a)(2)(B)(i):

> Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of . . . relating to a controlled substance . . . , other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

The *Padilla* Court deemed this statute "succinct, clear, and explicit in defining the removal consequence for Padilla's conviction." *Padilla*, 559 U.S. at 368. By simply "reading the text of the statute," Padilla's lawyer could determine that a plea of guilty would make Padilla eligible for removal. *Padilla*, 559 U.S. at 368. Instead, counsel was ruled incompetent for misadvising Padilla that he would not have to worry about his immigration status since he had been in the country so long. *Padilla*, 559 U.S. at 359, 368-69.

In *Sandoval*, counsel advised the defendant to accept the State's plea offer to third degree rape because he would not be immediately deported and would have sufficient time to retain proper immigration counsel and ameliorate any potential immigration consequences of his plea. *Sandoval*, 171 Wn.2d at 167. The court concluded counsel performed deficiently by incorrectly dismissing the risks of deportation and not informing the defendant that third degree rape equated to an "aggravated felony" under

9

No. 30150-8-III consol. w/30766-2-III
*In re Pers. Restraint of Juan Pedro Ramos; State v. Ramos*

federal immigration law that certainly subjected him to deportation. *Sandoval*, 171 Wn.2d at 174.

Juan Pedro Ramos' guilty plea is unlike *Padilla* or *Sandoval* because the consequences of Ramos' plea are ambiguous. Under 8 U.S.C. § 1227(a)(2)(A)(iii), "Any alien who is convicted of an aggravated felony at any time after admission is deportable."[1] An alien convicted of an aggravated felony is not eligible for cancellation of removal. 8 U.S.C. §§ 1229b(a)(3) & (b)(1)(C). 8 U.S.C. § 1101(a)(43)(M)(i) defines "aggravated felony" to include any crime "[which] involves fraud or deceit in which the loss to the victim exceeds $10,000." CP at 19.

Juan Ramos claims his crime, first degree theft, qualifies as an "aggravated felony." Ramos supports his assertion that his conviction subjects him to mandatory deportation with an affidavit from immigration attorney Thomas Roach. While we recognize Mr. Roach as a premier immigration attorney, our role is to decide on our own, rather than to rely on counsel, whether Ramos' conviction is one for an "aggravated felony." Questions of law, except foreign law, are not the subject of expert testimony. *Clark v. Eltinge*, 38 Wash. 376, 80 P. 556 (1905); *UTELCOM, Inc. v. Bridges*, 2010-0654

---

[1] The federal and state statutes cited herein are all from the 1996 version in effect when Juan Pedro Ramos committed the theft in the first degree and entered his guilty plea. The current versions of the statutes contain no differences pertinent to the outcome.

10

(La. App. 1 Cir. 9/12/11); 77 So.3d 39, 54; *Sunstar, Inc. v. Alberto–Culver Co.*, 586 F.3d 487, 495 (7th Cir. 2009).

The Immigration and Nationality Act (INA) does not define the terms "fraud" or "deceit." 8 U.S.C. § 1101. But several federal circuits offer guidance. When interpreting the meaning of 8 U.S.C. § 1101(a)(43)(M)(i), the court in *Valansi v. Ashcroft*, 278 F.3d 203, 209 (3d Cir. 2002) held the terms should be construed in the commonly accepted legal sense. Fraud means a false representation of a material fact made with knowledge of its falsity and with intent to deceive. *Valansi*, 278 F.3d at 209-10. The deceived party must believe and act on the misrepresentation to his disadvantage. *Valansi*, 278 F.3d at 209-10. Likewise, the term "deceit" is commonly perceived and has been defined as the act of intentionally giving a false impression. *Valansi*, 278 F.3d 209-10; *see also Patel v. Mukasey*, 526 F.3d 800 (5th Cir. 2008) ("fraud" and "deceit" retained their commonly understood legal meanings).

The Second Circuit, in construing "fraud" and "deceit" under the INA, noted that an offense under 8 U.S.C. § 1101(a)(43)(M)(i) ordinarily involves the taking or acquisition of property with consent that has been fraudulently obtained. *Bazuaye v. Mukasey*, 273 F. App'x 77 (2d Cir. 2008). Bolstering its construction, the court noted that Congress provided a separate definition for an "aggravated felony" where simple theft is involved. That statute, former 8 U.S.C. § 1101(a)(43)(G)(1996), defines

11

"aggravated felony" to include "a theft offense . . . for which the term of imprisonment imposed . . . is at least five years." This statute covers those theft offenses where a defendant takes property without consent, as opposed to consent fraudulently obtained.

Fraud and deceit did not infect Juan Ramos' theft. Nothing in the State's probable cause affidavit, in the charging information, or in Juan Pedro Ramos' allocution suggests Ramos' crime "involved fraud or deceit." Ramos agreed to drive cars from a car dealership lot with keys provided to him by a colleague who stole the master set of keys. The affidavit holds no allegation that the keys were stolen by misrepresentation or deceit. Ramos sought to drive the cars from the dealership lot after business hours, without any representations.

Ramos' theft also does not qualify as an aggravated felony, under other subsections of 8 U.S.C. § 1101(a)(43). Today, under 8 U.S.C. § 1101(a)(43)(G), an aggravated felony includes "theft" but only if defendant is imprisoned for at least one year. Ramos received only a 45-day sentence. Whether an offense is an aggravated felony, for purposes of immigration and deportation, is determined by the actual term of imprisonment imposed for that offense. *United States v. Graham*, 169 F.3d 787, 789-90 (3rd Cir. 1999).

Finally, Juan Pedro Ramos contends that his offense constituted a commission of a crime involving moral turpitude, which automatically made him ineligible to remain in

the United States. To support his contention, Ramos cites to *Jordan v. De George*, which held that all offenses involving fraud are crimes of moral turpitude. *Jordan v. De George*, 341 U.S. 223, 227-32, 71 S. Ct. 703, 95 L. Ed. 886 (1951). But this argument only returns us to our conclusion that Ramos' theft did not constitute fraud or deceit.

Juan Ramos might argue that the cases defining "fraud and deceit" under the INA were decided after he pled guilty. But he cites no cases prior to his plea that defined his conduct as fraudulent or deceitful. At the least, when Rem Ryals advised Ramos, the immigration consequences of Ramos' guilty plea were unclear. If "the law is not succinct and straightforward," counsel must provide only a general warning that "pending criminal charges may carry a risk of adverse immigration consequences." *Padilla*, 559 U.S. at 369.

Juan Ramos' own testimony establishes that Rem Ryals gave him accurate advice. Ramos learned, based upon consultation with Ryals before the guilty plea, that he could be deported. *Padilla* implies that defense counsel must communicate to the client the immigration consequences of a plea, rather than rely upon the client reading a written form warning. But we do not consider Ryals' reading of the warning from the form to be less of a caution than if Ryals independently uttered the warning. No case requires that the warning of immigration consequences come directly from the thoughts of the attorney rather than the attorney reading the warning to the client.

13

Juan Pedro Ramos signed paperwork confirming the advice of Rem Ryals. Paragraph 6(h) of the guilty plea statement provided that his plea was grounds for deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. In paragraph 12 of the guilty plea, Ramos recognized that his guilty plea could affect his immigration status and he acknowledged that his lawyer had explained such to him. At his plea hearing, the court informed Juan Pedro Ramos that he was giving up various constitutional rights and explained, "If you're not a citizen of the United States, you'll face deportation upon the entry of a finding of guilty." RP at 3 (Jan. 21, 1997). Ramos indicated he understood.

Since Juan Ramos has not shown ineffective assistance of counsel, he fails to meet the first prong of the *Strickland* test. Therefore, we need not address whether he was prejudiced by any representation.

## CONCLUSION

Under *Padilla* and *Sandoval* the advice of Juan Pedro Ramos' counsel was not deficient. We affirm his conviction and deny his personal restraint petition.

14

No. 30150-8-III consol. w/30766-2-III
*In re Pers. Restraint of Juan Pedro Ramos; State v. Ramos*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Fearing, J.

WE CONCUR:

Brown, J.

Siddoway, C.J.

15