IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33523-2-III |
| Respondent, | ) | (consolidated with |
| | ) | No. 32930-5-III) |
| v. | ) | |
| | ) | |
| ALVARO MOISES RAMOS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

| | |
|---|---|
| | ) |
| IN THE MATTER OF THE PERSONAL | ) |
| RESTRAINT PETITION OF | ) |
| | ) |
| ALVARO MOISES RAMOS, | ) |
| | ) |
| Petitioner. | ) |

FEARING, C.J. — On appeal, Alvaro Ramos seeks to vacate a guilty plea, entered

on May 26, 2009, to one count of attempting to elude a police officer. He contends his

attorney did not inform him of the immigration consequences of his plea, and he thereby

suffered ineffective assistance of counsel. Since the facts and the law support Ramos'

contention, we agree and vacate his guilty plea.

## FACTS

Alvaro Moises Ramos has resided in the United States since age eleven. On

November 20, 2006, the State of Washington charged Ramos, in Grant County Superior

Court, with attempting to elude a pursuing police vehicle and driving while license

suspended or revoked in the second degree, as a result of conduct on November 2, 2006,

in Quincy. On November 26, 2006, the court issued a warrant for his arrest.

In March of 2009, the police arrested Ramos on the warrant issued on November

26, 2006. The trial court appointed Brett Billingsley as Ramos' attorney. On May 26,

2009, Ramos pled guilty to one count of attempting to elude. As a condition of the plea,

the State dismissed the driving with license suspended charge. As part of the plea

arrangements, Ramos checked a box at the end of the statement of plea of guilty form

that read:

> Instead of making a statement, I agree that the court may review the
> police reports and/or a statement of probable cause supplied by the
> prosecution to establish a factual basis for the plea.

Clerk's Papers (CP) at 10. The report and statement showed that Ramos drove with his

license suspended and fled from police until physically apprehended.

Alvaro Ramos declared in a later affidavit in support of a motion to vacate his

2

guilty plea:

> I know that it never came up at all about anything to do with immigration. My wife also came to court with me and she also met Mr. Billingsley with me. . . .
>
>         . . . .
>         . . . But if he would have told us that this deal wouldn't give any chances at all to stay here, then I wouldn't have taken this deal. My wife and I would have asked him to find some other ways to solve this case so that I could still pay for this crime and also still keep my family together.

CP at 43-44.

Attorney Brett Billingsley averred, in pertinent part:

> I do not recall that I was ever aware of Mr. Ramos' immigration status. I remember that we conversed easily in English. I would not have had any particular reason to suspect that Mr. Ramos was not a U.S. citizen. . . . I do not have any information regarding immigration status or any other immigration-related information concerning Mr. Ramos recorded in my file. . . .
>         . . . I am able to recall what my general practices were in relation to immigration advice at the time of this particular plea and sentencing. It was always my general practice to go over all sections of a client's guilty plea with my client. This would include the general immigration warnings that are part of the State of Washington *Statement of Defendant on Plea of Guilty*.

CP at 40-41.

Billingsley stated in a second declaration:

> I have previously submitted an affidavit in this matter concerning the fact that I did not provide any specific immigration advice to Mr. Ramos' except for the general warnings included in his guilty plea statement.
>
>         . . . .
>         Due to the very limited time that I was given to review the judgment and sentence, and also since this was an agreed plea, I never discussed any

3

of the time limits for filing any collateral appeal with my client. If the court did not mention these time limits during the sentencing then it is very likely that a defendant under these circumstances wouldn't have ever received notice of the collateral appeal time limits.

CP at 46-47.

The trial court sentenced Alvaro Ramos to thirty days in jail. Ramos received credit for one day served, and the trial court converted the remaining twenty-nine days of jail to two hundred and thirty two hours of community service. The trial court did not inform Ramos, during the plea hearing, of a right to collateral attack or appeal.

For an unknown reason, Alvaro Ramos performed labor on a work crew instead of or in addition to community service. He missed a day of work on the crew and a court date on February 5, 2010. The trial court then issued another warrant for his arrest. On arrest for that warrant, immigration authorities issued an immigration detainer, by which Grant County needed to transfer Ramos to federal detention upon release from county custody. Ramos then served the remaining portion of his sentence in jail. Upon Ramos' release from jail, county officials conveyed him to the Northwest Immigration Detention Center, and immigration and custom enforcement commenced removal proceedings. In turn, Ramos sought to qualify for "Cancellation of Removal as a Non-Permanent Resident" under Immigration and Nationality Act Section 240A(b).

On December 13, 2011, the immigration court ordered Alvaro Ramos removed.

4

No. 33523-2-III; 32930-5-III
*State v. Ramos; Pers. Restraint Petition of Ramos*

His appeal now rests before the Board of Immigration Appeals. On January 26, 2012, Ramos appeared before the immigration court in Seattle. We do not know why he appeared if the court had already ordered removal. The immigration court told Ramos that the only way to avoid deportation would be "if [he] could change this case." CP at 44. Ramos' immigration counsel advised him that the immigration court's comment meant he needed to vacate his guilty plea in the Grant County prosecution.

PROCEDURE

In February 2013, Alvaro Ramos brought a motion to vacate a guilty plea. We do not know the grounds of the motion, in part, because the motion did not state any grounds and Ramos either did not file a memorandum accompanying the motion or Ramos did not transfer the memorandum to this court. On September 4, 2013, Ramos filed an amended memorandum of authorities in support of motion to vacate guilty plea, in which memorandum he mentions CrR 4.2 and 7.8. CrR 4.2(f) addresses withdrawal of a guilty plea. CrR 7.8 covers relief from a judgment.

On October 1, 2013, the trial court entered a notice of intended transfer of motion to Court of Appeals for disposition as a personal restraint petition. The notice read, in part:

> 2. This court has determined that Defendant's motion should be transferred to the Court of Appeals as a personal restraint petition, pursuant to CrR 7.8(c)(2). . . .

5

3. If Defendant does not withdraw or amend said motion, by writing filed with the Clerk of the Grant County Superior Court and served on opposing counsel, the court will, on the criminal docket noted below, enter the attached order for transfer to the Court of Appeals:
OCT. 28, 2013 (date).
4. If Defendant withdraws the motion, no further action will be taken.

CP at 113. The notice omitted mention of Alvaro Ramos' CrR 4.2 motion. A letter opinion accompanied the notice of intended transfer. The letter encompassed the court's ruling in two other cases, in addition to Alvaro Ramos's prosecution, and read, in part:

I've had the opportunity to consider applicable authorities and am now able to resolve each defendant's motion to withdraw guilty plea. The court's conclusions and disposition are set forth below.

Villanueva Anguiano
Defendant's motion is found not to be time-barred by RCW 10.73.090 because of the court's failure, at the time of sentencing, to advise him of the time limits of that statute, as required by CrR 7.2(b). There is nothing in the record to suggest that Defendant received the required advice by virtue of the unsigned attachment to the Judgment and Sentence.
Defendant is further found not to have made a substantial showing that he is entitled to relief. The *Padilla* standard does not apply retroactively to his case.
Finally, it is the court's conclusion that resolution of Defendant's motion will not require a factual hearing, all material matters being of record.
Based on these conclusions, I have entered an order transferring Defendant's motion to the Court of Appeals as a Personal Restraint Petition. A copy of that order is enclosed.
. . . .
Ramos
For the same reasons, and upon the same conclusions set forth above, I have also entered an order transferring Mr. Ramos's motion to the Court of Appeals as a Personal Restraint Petition.

6

CP at 137-38 (boldface, italics, and citation omitted).

On October 25, 2013, before the court imposed deadline, Alvaro Ramos voluntarily withdrew his CrR 7.8 motion. The withdrawal did not reference the pending CrR 4.2 motion. The clerk thereafter wrote on a criminal minute sheet: "Court states Def[endant] has voluntarily withdrawn his motion, order is not entered." CP at 116.

On June 18, 2014, Alvaro Ramos filed a second amended memorandum of authorities in support of motion to vacate guilty plea. The memorandum referenced relief under both CrR 4.2 and 7.8. Also on June 18, 2014, Ramos filed a second declaration, in which he averred:

> It's been explained to me at this time that my appeal also has to do with if I was ever given warnings about time limits that I had if I wanted to file an appeal. It's also been explained to me at this time that there are different types of appeals. I didn't understand this until now.

CP at 57. On July 7, 2014, Ramos filed a motion to stay defendant's motion to vacate pending Court of Appeals decision. On December 1, 2014, the trial court filed an order transferring Ramos's CrR 7.8 motion to this court to be considered as a personal restraint petition. In doing so the trial court found that the petition was not time barred, Ramos had not made a substantial showing that he is entitled to relief, and there is no requirement of a factual hearing.

On June 5, 2015, Alvaro Ramos filed a notice of appeal of his May 26, 2009 guilty

7

plea. On August 18, 2015, this court's commissioner ruled the appeal to be timely.

LAW AND ANALYSIS

*Issue 1: Whether the trial court erred by denying Alvaro Ramos' motion to vacate his guilty plea and then transferring the motion to this court to be treated as a personal restraint petition?*

*Answer 1: We need not and do not address this issue, because we may resolve the case on the basis of Alvaro Ramos' direct appeal.*

Alvaro Ramos assigns error to the trial court's denial of his motion to vacate his guilty plea and the trial court's transfer of this case to this court as a personal restraint petition. In turn, the State concedes Ramos received ineffective assistance of counsel, but argues that Ramos filed the petition prematurely, did not timely file his personal restraint petition, has waived or withdrawn relief under a petition, and should be faulted for successive petitions. We do not resolve the State's contentions. Alvaro Ramos also has a pending direct appeal before this court. We may vacate the guilty plea as part of Ramos' appeal so that the CrR 7.8 motion and resultant personal restraint petition grows moot.

*Issue 2: Should we address the validity of Alvaro Ramos' guilty plea when he does not assign error to the entry of the plea?*

*Answer 2: Yes, because Ramos argues, in his brief, for the vacation of the guilty plea.*

Alvaro Ramos fails to assign error to his guilty plea. RAP 10.3(a)(4) reads:

> *Assignments of Error*. A separate concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error.

We would refuse to address the validity of the plea if we literally applied RAP 10.3(a)(4).

RAP 1.2(a) declares:

> **Interpretation**. These rules will be liberally interpreted to promote justice and facilitate the decision of cases on the merits. Cases and issues will not be determined on the basis of compliance or noncompliance with these rules except in compelling circumstances where justice demands, subject to the restrictions in rule 18.8(b).

Alvaro Ramos notifies this court that he challenges his guilty plea in his brief's argument. He informs us of an attack on the plea because of ineffective assistance of counsel. The State concedes that he received ineffective assistance of counsel. The State shows no prejudice in our addressing the merits of Ramos' appeal. Despite Ramos' technical error in omitting an assignment of error to the plea, we determine to address the merits of his ineffective assistance of counsel argument.

*Issue 3: Whether this court may consider, for purposes of Alvaro Ramos' direct appeal, evidence that Ramos filed in support of his personal restraint petition?*

*Answer 3: Yes.*

Though neither side addressed the issue, we face the question of what evidence we may review in deciding Alvaro Ramos' appeal. Pending before this court is both an

appeal and a personal restraint petition of Ramos. In support of his personal restraint

petition, Ramos filed affidavits signed by himself and former counsel, Brett Billingsley.

On the one hand, in a direct appeal, the appellant may not bring new evidence to this

court. *State v. Sandoval*, 171 Wn.2d 163, 169, 249 P.3d 1015 (2011). On the other hand,

the petitioner may present new evidence in a personal restraint petition. *Sandoval*, 171

Wn.2d at 169; *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

In *In re Pers. Restraint of Ramos*, 181 Wn. App. 743, 326 P.3d 826 (2014), *review

granted sub nom. State v. Ramos*, 181 Wn.2d 1029, 340 P.3d 229 (2015), this court faced

the same issue of whether we would review new evidence in an appeal consolidated with

a personal restraint petition. We noted that the Washington State Supreme Court, in *State

v. Sandoval*, 171 Wn.2d 163 impliedly rejected a constrained approach to the review of

evidence in a consolidated proceeding. We allowed Juan Pedro Ramos use of new

evidence in both his direct appeal and personal restraint petition. We follow our ruling in

*Ramos* and consider Alvaro Ramos' affidavits when deciding his appeal.

*Issue 4: Whether Alvaro Ramos suffered ineffective assistance of counsel upon

entry of his guilty plea?*

*Answer 4: Yes.*

Alvaro Ramos argues that he suffered ineffective assistance of counsel when his

trial counsel failed to warn him of the immigration consequences of his plea of guilty to

10

felony attempting to elude a pursuing police vehicle. The facts show that counsel rendered no warnings. On these facts, the State concedes ineffective assistance of counsel. We agree.

To establish ineffective assistance of counsel, a defendant must satisfy a two part test: (1) that his or her counsel's assistance was objectively unreasonable, and (2) that as a result of counsel's deficient assistance, he or she suffered prejudice. *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To demonstrate the first prong, deficient performance, a reviewing court adjudges the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. *Strickland*, 466 U.S. at 690. In satisfying the prejudice prong, a defendant challenging a guilty plea must show a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Sandoval*, 171 Wn.2d at 174-75; *In re Pers. Restraint of Riley*, 122 Wn.2d 772, 780-81, 863 P.2d 554 (1993).

Since Alvaro Ramos files a direct appeal, we will apply the teachings of the United States Supreme Court's 2010 decision, in *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), to this appeal despite Ramos entering a plea in 2006. *In re Ramos*, 181 Wn. App. 743 (2014). In *Padilla v. Kentucky*, the United States Supreme Court stated that because of deportation's "close connection" to the criminal

11

process, advice about deportation consequences falls within the ambit of the Sixth Amendment right to counsel. Therefore, incorrect advice or no advice as to the immigration consequences of a guilty plea may constitute ineffective assistance.

The nation's high Court explained, in *Padilla v. Kentucky*, that, because immigration law can be complex, the precise advice a constitutionally effective counselor provides depends on the clarity of the law. If the applicable immigration law "is truly clear" that an offense is deportable, defense counsel must correctly advise the defendant that pleading guilty to that particular charge would lead to deportation. 130 S. Ct. at 1483. If "the law is not succinct and straightforward," counsel must provide only a general warning that "pending criminal charges may carry a risk of adverse immigration consequences." 130 S. Ct. at 1483.

The immigration consequences of a conviction for attempting to elude a pursuing police vehicle were clear. Immigration law considers the crime one of moral turpitude and the offender deportable. Even if the law is not clear, Brett Billingsley was ineffective by failing to mention to Ramos the possibility of deportation.

A conviction for a crime involving moral turpitude renders Alvaro Ramos deportable and ineligible to apply for any form of immigration relief, such as cancellation of removal, and would render him ineligible to return to the United States. 8 U.S.C. § 1182(a)(2)(A)(i)(I) (2009). In 2011, the Board of Immigration Appeals determined that

violations of RCW 46.61.024, the attempting to elude a police officer statute, are per se crimes of moral turpitude thus rendering anyone with a conviction for attempting to elude statutorily ineligible for cancellation of removal. *In re Ruiz-Lopez*, 25 I. & N. Dec. 551 (B.I.A. 2011). In doing so, the Board of Immigration Appeals explained that the crime involves deliberately flouting lawful authority and endangering the safety of others, conduct that violates accepted societal norms of moral behavior. Previous to 2006, other courts held similar behavior to constitute a crime of moral turpitude. *Wei Cong Mei v. Ashcroft*, 393 F.3d 737 (7th Cir. 2004); *In re Lopez-Meza*, 22 I. & N. Dec. 1188, 1196 (B.I.A. 1999); *In re S*, 3 I. & N. Dec. 617 (B.I.A. 1949).

## CONCLUSION

We vacate Alvaro Ramos' guilty plea to one count of felony attempting to elude a police officer and remand for further proceedings.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____     _____
Siddoway, J.                                          Pennell, J.

13