IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33432-5-III |
| Respondent, | ) | (consolidated with 33052-4-III) |
| | ) | |
| v. | ) | |
| | ) | |
| MARIA I. MANZO, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |
| | ) | |
| ――――――――――――――――――――――― | ) | |
| | ) | |
| In the Matter of the Personal Restraint of | ) | |
| | ) | |
| MARIA I. MANZO | ) | |

FEARING, C.J. — In 2004, Maria Manzo pled guilty to conspiracy to possess

cocaine with the intent to deliver. She now argues that she received ineffective assistance

of counsel because her trial counsel failed to inform her of the full immigration

consequences of her plea or he affirmatively misadvised her of the immigration

consequences. We disagree.

## FACTS

Maria Isabel Manzo came to the United States in 1996 at the age of twelve years

old. On November 12, 2003, following a search of her home, the State of Washington

charged Maria Manzo with possession of marijuana with intent to deliver, possession of

cocaine with intent to deliver, possession of stolen property in the first degree, and alien

in possession of a firearm. Attorney Adolfo Banda represented Manzo.

On January 12, 2004, Maria Manzo pled guilty to the amended charge of

conspiracy to possess cocaine with the intent to deliver. The State recommended time

served and restitution. Defense counsel Adolfo Banda checked a box allowing the court

to "review the police reports and/or a statement of probable cause supplied by the

prosecution to establish a factual basis for the plea." Clerk's Papers (CP) at 12.

After accepting the plea, the trial court, on January 12, 2004, heard argument

regarding sentencing. Adolfo Banda commented:

> My client has—actually I know my client has an immigration hold
> and she'll be deported. She'll be joined by her infants in Mexico once she
> gets to Mexico. The deportation in itself is punishment. She won't be able
> to come back to this country and she won't be able to acquire legal status in
> this country as the law stands right now. Therefore, in the interests of
> justice, we ask the court to accept the State's recommendation.

CP at 51. Victor Guzman interpreted the English words of Banda into Spanish for Maria

Manzo. When the court asked if Manzo wished to comment, Manzo replied: "I just want

to be reunited with my children." CP at 51.

2

During the 2004 plea hearing, neither the trial court nor counsel informed Maria Manzo of her right to appeal the sentence. Neither the trial court nor counsel informed Manzo of the right to collateral attack of the judgment or a time limit for collateral attack.

PROCEDURE

On November 29, 2011, Maria Manzo filed, with the trial court, a motion to withdraw her guilty plea. In support of her motion, Manzo filed two declarations and two declarations from Adolfo Banda.

In Maria Manzo's first declaration, she averred:

> Mr. Banda never told me anything specific about what would happen at immigration. The only things that were told to me were in the papers that I signed. It was my understanding from these papers that when I pleaded guilty that I would still have some chance to argue to stay here in the United States. I had been here for a long time and I had two children and one of them needed to see doctors.
> . . . .
> . . . I also found out from my immigration lawyer that my lawyer for this case should have warned me that by signing these papers that I wouldn't have any chances at all to stay in the United States. If that had been explained to me clearly[,] I would have not just agreed to be deported. I didn't have anything to do with drugs and I would have testified in court about this.

CP at 41.

In her second declaration, Maria Manzo stated:

> I remember now that Mr. Banda told me that it would give a better chance of the court going along with the agreement he made with the prosecutors if he also said that I would be deported. I was very concerned about this, but then he also told me that he wasn't an immigration lawyer so

3

he actually didn't know whether or not I would be deported. He said that it meant just that I was being sent for deportation. He said that this would be up to the immigration court. I remember now after having it read to me how he also talked about my children to the judge.

CP at 42.

In his first declaration, Adolfo Banda declared:

It was always my general practice to go over all the sections of a client's guilty plea with my client. This would include the general immigration warnings that are part of the State of Washington *Statement of Defendant on Plea of Guilty*.

CP at 36. He also averred that he recommended to Maria Manzo to employ an Alford

plea for immigration reasons.

In Adolfo Banda's second declaration, he avowed:

As previously stated, I was not certain that Ms. Manzo would actually be deported as a result of this conviction. It seemed likely to me that Ms. Manzo would be sent for deportation proceedings after the case had ended. It was my intention in bringing up the issue of deportation to the court to make the court mindful of the fact that if she was going to be deported that any additional conditions that the court might add as to drug treatment would be impossible for Ms. Manzo to fulfill.

CP at 54.

Maria Manzo also filed an affidavit of immigration attorney, Drew White. White

declared that he recently interviewed Manzo, who informed him that she lacked

knowledge that her guilty plea precluded her from obtaining legal status in the United

States. White further averred that Manzo's crime prevented her from legal status in this

4

country. White faults Adolfo Banda for failing to inform Manzo of the direct deportation consequences of her plea.

On January 9, 2015, the trial court transferred the motion to withdraw the guilty plea to this court to be considered as a personal restraint petition. When transferring the case, the trial court found that Adolfo Banda did not affirmatively misadvise Maria Manzo regarding the immigration consequences of her plea.

On May 27, 2015, Maria Manzo appealed the trial court's January 12, 2004 acceptance of her guilty plea and finding of guilt. Our court commissioner ruled the appeal to be timely given Manzo's lack of notice regarding a right to appeal. Commissioner's Ruling, *State v. Manzo*, No. 33432-5-III (Wash. Ct. App. July 8, 2015). We consolidated the direct appeal with the personal restraint petition.

## LAW AND ANALYSIS

In both her personal restraint petition and her direct appeal, Maria Manzo argues that she received ineffective assistance of counsel because Adolfo Banda misadvised her of the full immigration consequences of her guilty plea. Therefore, according to Manzo, *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010) compels vacation of her plea. The State responds, in part, that attorney Banda warned Manzo of the full legal consequences. We agree with the State.

5

Because we review Maria Manzo's personal restraint petition, we may consider affidavits filed by Manzo in support of her motion to vacate. *In re Personal Restraint of Ramos*, 181 Wn. App. 743, 749, 326 P.3d 826 (2014), *review granted*, 181 Wn.2d 1029 (2015). Because we also review this case on direct appeal, Manzo receives the benefit of the changes in law since her 2004 plea. *In re Ramos*, 181 Wn. App. at 749. Anyway, our state high court held that *Padilla v. Kentucky* did not announce a new rule as applied in Washington and therefore the benefits of *Padilla* apply retroactively to defendants in collateral review. *In re Personal Restraint of Yung-Cheng Tsai*, 183 Wn.2d 91, 103, 351 P.3d 138 (2015).

A strong public interest encourages the enforcement of a plea agreement when an accused voluntarily and intelligently enters the plea. *In re Detention of Scott*, 150 Wn. App. 414, 426, 208 P.3d 1211 (2009). Nevertheless, the court may allow a defendant to withdraw his guilty plea when the withdrawal is necessary to correct a manifest injustice. *In re Detention of Scott*, 150 Wn. App. at 426. The defendant bears the burden of proving manifest injustice, defined as "'obvious, directly observable, overt, not obscure.'" *In re Detention of Scott*, 150 Wn. App. at 426-27 (internal quotation marks omitted) (quoting *State v. Ross*, 129 Wn.2d 279, 283-84, 916 P.2d 405 (1996)). For purposes of withdrawing a guilty plea, a manifest injustice exists under four per se nonexclusive instances: (1) the defendant did not ratify the plea, (2) the plea was not

·voluntary, (3) the defendant received ineffective assistance of counsel, or (4) the plea agreement was not kept. *State v. Wakefield*, 130 Wn.2d 464, 472, 925 P.2d 183 (1996); *State v. Wilson*, 162 Wn. App. 409, 414-15, 253 P.3d 1143 (2011). Maria Manzo relies only on ineffective assistance of counsel.

To establish ineffective assistance of counsel, a defendant must satisfy a two-part test (1) that his or her counsel's assistance was objectively unreasonable and (2) that as a result of counsel's deficient assistance, he or she suffered prejudice. *Strickland v. Washington*, 466 U.S. 668, 690, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To demonstrate the first prong, deficient performance, a reviewing court adjudges the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. *Strickland*, 466 U.S. at 690. The appellate court presumes counsel's effectiveness. *State v. Gomez Cervantes*, 169 Wn. App. 428, 434, 282 P.3d 98 (2012).

The Sixth Amendment right to effective assistance of counsel encompasses the plea process. *McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970); *State v. Sandoval*, 171 Wn.2d 163, 168-69, 249 P.3d 1015 (2011). Faulty advice of counsel may render the defendant's guilty plea involuntary or unintelligent. *Hill v. Lockhart*, 474 U.S. 52, 56-57, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985); *State v. Sandoval*, 171 Wn.2d at 169. To establish that the plea was involuntary or unintelligent

due to counsel's inadequate advice, the defendant must show under the test in *Strickland*

that his attorney's performance was objectively unreasonable and that he was prejudiced

by the deficiency. *Sandoval*, 171 Wn.2d at 169.

Prior to *Padilla v. Kentucky*, 559 U.S. 356 (2010), Washington law considered

deportation a collateral consequence of a conviction and anything short of an affirmative

misrepresentation by counsel of the plea's deportation consequences could not support a

plea withdrawal. *State v. Sandoval*, 171 Wn.2d at 170 n.1; *In re Personal Restraint of

Yim*, 139 Wn.2d 581, 587-89, 989 P.2d 512 (1999). *Padilla* explicitly rejected the

proposition that only affirmative erroneous advice about deportation consequences of the

plea, and not failure to give such advice, could constitute ineffective assistance of

counsel. *Padilla* also emphasized that, for at least the past fifteen years, professional

norms imposed an obligation on counsel to provide advice on the deportation

consequences of a client's plea.

Dicta in *Padilla* suggests that its holding also applies to undocumented noncitizens

who would become ineligible to apply for relief.

> [W]e have recognized that "preserving the possibility of"
> discretionary relief from deportation . . . "would have been one of the
> principal benefits sought by defendants deciding whether to accept a plea
> offer or instead to proceed to trial."

8

*Padilla*, 559 U.S. at 368 (quoting *INS v. St. Cyr*, 533 U.S. 289, 323, 121 S. Ct. 2271, 150 L. Ed. 2d 347 (2001)). This court applied a full *Padilla* analysis when an undocumented defendant argued that counsel failed to advise him that his offense constituted a commission of a crime involving moral turpitude, which automatically made him ineligible to remain in the United States. *In re Ramos*, 181 Wn. App. at 754.

Maria Manzo relies on *State v. Littlefair*, 112 Wn. App. 749, 51 P.3d 116 (2002). In *Littlefair*, the defendant did not receive immigration warnings because his attorney struck them from the written plea of guilty. Counsel subjectively believed that his client was a United States citizen. The trial court vacated the guilty plea, and this court affirmed. This court noted that when Littlefair pled, he did not know the likelihood of deportation. His lack of knowledge was not due to any fault or omission on his part. Littlefair did not consider the stricken subsections applied to him, so he did not read them. The sentencing court failed to ascertain whether counsel properly advised Littlefair of possible deportation consequences.

*State v. Littlefair* lacks any relevance to this appeal. Contrary to the argument of Maria Manzo, her trial counsel specifically warned that she would be deported and not be eligible to return to the United States. During the January 12, 2004, hearing, Adolfo Banda declared: "[A]ctually I know my client has an immigration hold and she'll be deported. She'll be joined by her infants in Mexico once she gets to Mexico." CP at 51.

9

Banda added: "She won't be able to come back to this country and she won't be able to acquire legal status in this country as the law stands right now." CP at 51.

Maria Manzo protests that she did not understand she could not return to the United States. Nevertheless, her counsel specifically stated otherwise during the plea hearing. We recognize that Manzo probably does not understand English. Nevertheless, an interpreter repeated, in Spanish, her counsel's clarion warning. She does not allege any faulty translation. Manzo does not aver that Adolfo Banda advised her contrary to his court comments or that Banda later recanted his comments.

## CONCLUSION

We affirm Maria Manzo 2004's guilty plea. We dismiss her personal restraint petition and deny her appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____    _____
Siddoway, J.                Lawrence-Berrey, J.

10