# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52801-1-II |
| Respondent, | |
| v. | |
| FEN SHOU CHEN, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Fen Shou Chen pleaded guilty to one count of manufacture of a controlled substance and was released from custody on credit for time served. His plea avoided a potential high end sentence of 10 years had he proceeded to trial. Upon his release, he was detained by the United States Immigration and Customs Enforcement (ICE).

Chen then moved to withdraw his guilty plea on two grounds. First, he argued that he was denied an adequate interpreter when he entered the plea because he was only provided a Mandarin interpreter for his plea proceedings, even though his primary dialect is Fuzhou. Second, he argued that his attorney inadequately advised him of the immigration consequences of pleading guilty because she told him that it was unlikely that ICE would immediately detain him when he was released from jail. He contends that the lack of a Fuzhou interpreter also impacted his ability to understand his attorney's advice regarding the immigration consequences of his plea. The trial court denied Chen's motion to withdraw his plea.

Chen appeals, arguing the trial court abused its discretion in denying his motion, raising the same arguments that he did below. We affirm.

FACTS

In December 2017 Chen was arrested and charged with one count of manufacture of a controlled substance, marijuana, and one count of unlawful use of a building for drug purposes. On his attorney's advice, Chen decided to plead guilty to the marijuana charge so that he would be released immediately with credit for time served. The other charge was dismissed.

At least a week before pleading guilty, Chen informed his attorney that his first language was the Fuzhou dialect of Chinese, rather than the Mandarin dialect spoken by the interpreters they had been using. Chen said he understood 75-80 percent of conversational Mandarin, but not legal terminology.

At the change of plea hearing, Chen nevertheless had a Mandarin interpreter. At the beginning of the hearing, the interpreter confirmed that he had spoken with Chen that morning and was satisfied that Chen understood and could communicate well with him. The trial court did not ask Chen if he understood the immigration consequences of his plea. However, the trial court did ask Chen if he understood his plea agreement and if it had been translated for him, and Chen said yes. Chen also affirmed that he understood the proceedings and did not have any further questions, other than asking about the return of some of his personal belongings.

The plea agreement that Chen signed included a clause advising him that pleading guilty to a crime under state law is grounds for deportation. The plea agreement also included an interpreter certification that the Mandarin interpreter signed under the penalty of perjury, stating that Chen understood Mandarin and that he "has acknowledged his . . . understanding of both the translation and the subject matter of this document." Clerk's Papers (CP) at 7-8.

The trial court accepted Chen's change of plea to guilty and sentenced him to time already served. Upon Chen's release, ICE immediately detained him and placed him in deportation proceedings. Chen then moved to withdraw his guilty plea with the assistance of a new attorney.

In her declaration supporting Chen's motion to withdraw, Chen's original defense counsel stated that although she thought she advised Chen that ICE might detain him, she has come to believe that he misunderstood and was left with the impression that he would not be subject to immigration consequences if he pleaded guilty. In hindsight she came to understand that Chen "did not understand a good portion of things that [they] discussed, particularly the potential immigration consequences." CP at 56. Even if she had been clearer in communicating with Chen, she believed "there is a good chance that he would not have understood" without a Fuzhou interpreter. *Id.*

In his declaration, Chen stated that he was not accurately informed of the likelihood that ICE would detain him upon his release from jail and that defense counsel had told him there was "'little to no'" chance of facing any immigration consequences from his guilty plea. CP at 49. At the hearing on Chen's motion to withdraw his guilty plea, he stated unequivocally that he would not have pleaded guilty had he known that he would have been picked up by ICE upon release from custody. In his declaration, Chen stated that he would not have pleaded guilty had he fully understood the immigration consequences of the plea.

At the hearing on his motion to withdraw, Chen had a Fuzhou interpreter participating by telephone. The trial court ordered Chen's original defense counsel to attend. Both parties agreed that the trial court did not need to place her under oath because she was an officer of the court. She and the trial court had the following exchange about her meetings with Chen:

> THE COURT: Thank you. And during these meetings, when you asked such questions, did you receive responses from Mr. Chen that were responsive?

3

> [DEFENSE COUNSEL]: Yes. There were times when he would ask to rephrase the question, but did respond appropriately.
>
> THE COURT: So, is it fair to say that during these meetings in December and January and February, that you felt you were able to effectively communicate with Mr. Chen, and him with you?
>
> [DEFENSE COUNSEL]: Yes.
>
> THE COURT: . . . Tell me how you came to learn that Fuzhou was his first dialect, first language.
>
> [DEFENSE COUNSEL]: I believe he was explaining to the interpreter why he couldn't understand something that had happened in court. In their discussion, he said that his first language was Fuzhou, and so, her and I both contacted the court administrator and let them know that.

Verbatim Report of Proceedings (VRP) (July 6, 2018) at 20.

Defense counsel explained to the trial court that Chen decided to plead guilty in part because there was no ICE hold on him at the time and he knew his offense was deportable, so he wanted to get out of custody quickly before ICE would have a chance to seize him from jail. In addition, it had become clear that the State was adding aggravators and that if convicted after a trial, Chen was facing a possible maximum sentence of 10 years, which was a "major contributor" to his decision to plead guilty. *Id.* at 24.

Counsel explained that she told Chen early on that the crimes he had been charged with were deportable offenses but that she did not know the process or the likelihood that ICE would seize Chen when he was released. She then explained:

> [DEFENSE COUNSEL]: He asked me if there was a hold on him, an ICE hold, and there was not. And he asked me, like, where the facility was, and if there was a process. And I said that there would be hearings, and there is a procedure to get representation there. And he asked me if I thought he would get picked up, and I said I don't know.
>
> THE COURT: In the declaration filed by Mr. Chen in support of his motion to withdraw his guilty plea, he states, and I am going to read a portion of the declaration to you. [Defense counsel] told me, from my limited understanding of Mandarin, that there was, quote, little to no, closed quote, chance of me facing any immigration consequences for my guilty plea. Do you believe that you made that statement to him?

[DEFENSE COUNSEL]: I believe that I said that I thought there was little chance of him getting picked up upon his release from custody.

*Id.* at 28-29.

At the hearing on the motion to withdraw, the trial court also confirmed that Chen understood that if he were found guilty at trial, he could be sentenced to 10 years in prison and that one consequence of withdrawing his plea could be a 10-year sentence. Chen confirmed he wanted to proceed with his motion.

The trial court denied Chen's motion. The trial court concluded that the record did not support Chen's contention that he could not communicate with his interpreters or counsel. The trial court noted that counsel was able to communicate with Chen about questions he had regarding his immigration status. At the change of plea hearing, "Chen was able to understand the translation and to communicate well with the interpreter." CP at 78. And during a lengthy colloquy at the change of plea hearing, Chen's responses to the trial court's questions were "entirely consistent with him having a clear understanding of the words that were being spoken." *Id.*

The trial court also concluded that counsel adequately advised Chen of the immigration consequences of his plea. The trial court reasoned:

> The deportation consequences attached to the guilty plea entered by Mr. Chen were clear. Pursuant to 8 U.S.C., [§] 1227, a conviction for the unlawful manufacture of marijuana is deportable. Mr. Chen's counsel so advised him of that consequence. The defendant asserts that his attorney was unclear regarding the timing of the deportation proceedings and how quickly he might be transferred to federal custody. However, such details are not part of the effective assistance of counsel regarding immigration consequences.

CP at 77.

Chen appeals.

5

ANALYSIS

Chen argues that the trial court erred in denying his motion to withdraw his guilty plea because he was not provided a qualified interpreter who spoke his dialect, his attorney did not effectively apprise him of the immigration consequences of his guilty plea, and he did not understand the immigration consequences because of the lack of a Fuzhou interpreter. We disagree. Although there is conflicting evidence in the record, the trial court did not abuse its discretion when it denied the motion to withdraw.

A.      Motion to Withdraw a Guilty Plea and Standard of Review

Under CrR 4.2(f), a trial court "shall allow a defendant to withdraw the defendant's plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice." "Where, as here, a criminal defendant moves to withdraw his guilty plea after judgment has been entered, CrR 7.8 governs CrR 4.2(f)." *State v. Martinez-Leon*, 174 Wn. App. 753, 759, 300 P.3d 481 (2013). Under CrR 7.8(b)(5), "the trial court may relieve a party from a final judgment for '[a]ny other reason justifying relief from the operation of the judgment.'" *Id.* (alteration in original) (quoting CrR 7.8(b)(5)). CrR 7.8 motions are subject to the one-year time bar for collateral attack on a judgment and sentence imposed by RCW 10.73.090. *Id.* Because Chen filed his motion within a year of entry of his judgment and sentence, the motion was timely.

"For purposes of CrR 4.2, there are four per se nonexclusive instances where a manifest injustice exists: where (1) the defendant did not ratify the plea, (2) the plea was not voluntary, (3) the defendant received ineffective assistance of counsel, or (4) the plea agreement was not kept." *State v. Wilson*, 162 Wn. App. 409, 414-15, 253 P.3d 1143 (2011) (footnote omitted). "The

defendant generally bears the burden of establishing the necessity for withdrawing" a guilty plea. *State v. Quy Dinh Nguyen*, 179 Wn. App. 271, 282-83, 319 P.3d 53 (2013).

We review a trial court's denial of a motion to withdraw a guilty plea for abuse of discretion. *State v. Teshome*, 122 Wn. App. 705, 709, 94 P.3d 1004 (2004). We likewise "review a trial court's ruling on a CrR 7.8 motion for abuse of discretion." *Martinez-Leon*, 174 Wn. App. at 759. We "defer to the trial court's determinations on conflicting testimony, witness credibility, and the persuasiveness of the evidence." *State v. Fry*, 153 Wn. App. 235, 239, 220 P.3d 1245 (2009). "But when a trial court bases its otherwise discretionary decision solely on application of a court rule or statute, the issue is one of law that we review de novo." *Martinez-Leon*, 174 Wn. App. at 759.

B.       Qualified Interpreter at the Change of Plea Hearing

Chen first argues that the trial court abused its discretion in denying his motion to withdraw his guilty plea because he was not provided a qualified Fuzhou interpreter and so his guilty plea was involuntary. Chen explains that for the majority of his proceedings he worked only with Mandarin interpreters, but he speaks only conversational Mandarin and his first language is the Fuzhou dialect of Fujian Province, where Chen is from. We disagree and hold that the trial court did not abuse its discretion.

In Washington, "'the right of a defendant in a criminal case to have an interpreter is based upon the Sixth Amendment constitutional right to confront witnesses and the right inherent in a fair trial to be present at one's own trial.'" *State v. Ramirez-Dominguez*, 140 Wn. App. 233, 243, 165 P.3d 391 (2007) (internal quotation marks omitted) (footnote omitted) (quoting *State v. Gonzales-Morales*, 138 Wn.2d 374, 379, 979 P.2d 826 (1999)). RCW 2.43.010 further secures the

right of non-English speakers in Washington to the assistance of qualified interpreters in legal proceedings.

"In Washington, a defendant's right to an interpreter means a right to a competent interpreter." *Teshome*, 122 Wn. App. at 711. The standard for competence relates to whether the rights of non-English speakers have been protected, even where there is some evidence that the interpretation has not been entirely accurate. *Ramirez-Dominguez*, 140 Wn. App. at 244.

Chen does not argue that his interpreters were unqualified, but rather that, due to the differences between the Mandarin and Fuzhou dialects of Chinese, he could not understand the formal or legal form of Mandarin used by his interpreters.

In *Ramirez-Dominguez*, the defendant claimed on appeal that he could not adequately understand his Spanish interpreter during trial because his primary language was Mixteco. 140 Wn. App. at 243. We held that the defendant's rights were adequately protected because the record showed that any confusion on his part flowed from his lack of familiarity with the judicial proceeding, and not from an inability to understand his interpreter. *Id.* at 246. We distinguished the case from two federal cases where the record was replete with evidence that the defendant in fact did not understand the interpreter, including instances where the defendants or the interpreters in those cases told the court that the defendant did not understand. *Id.* at 245-47 (citing *Perez-Lastor v. Immigration & Naturalization Serv.*, 208 F.3d 773 (9th Cir. 2000); *Amadou v. Immigration & Naturalization Serv.*, 226 F.3d 724 (6th Cir. 2000)).

Here, as in *Ramirez-Dominguez*, the record does not support Chen's contention that he did not understand his interpreter, the guilty plea proceedings, or the consequences of his guilty plea. Chen entered his guilty plea with the assistance of a Mandarin interpreter, and never raised any

concerns about the quality of the interpretation during that proceeding. Chen affirmed that he understood the contents of his guilty plea and his plea agreement, and he repeatedly affirmed that he understood the consequences of the plea. When the trial court asked Chen if he had any questions, Chen asked only for the return of his car and other personal belongings and did not raise any concerns about his ability to understand the proceedings.

Although Chen informed defense counsel that his first language was the Fuzhou dialect about a week before Chen pleaded guilty, he did not indicate at that time or during entry of his plea that he did not understand his Mandarin interpreters or the proceedings. Chen swore in his declaration that he understood "about 75-80% of conversational Mandarin," although he said he did not understand legal terminology. CP at 48. But as in *Ramirez-Dominguez*, Chen "did not express any difficulty understanding the questions he was asked and did not ask for clarification due to interpretation problems." 140 Wn. App. at 246-47; *see also State v. Aljaffar*, 198 Wn. App. 75, 84, 392 P.3d 1070 (2017) (no Sixth Amendment violation for use of uncertified interpreter because neither the defendant nor his attorney "ever indicated there had been any misunderstandings with the interpreter or a breakdown in communication").

In addition, Chen's interpreter signed a certification at the end of the plea agreement swearing that the interpreter had translated the agreement into Mandarin, and that this was a language that Chen understood. At the very beginning of the hearing to change Chen's plea to guilty, the interpreter confirmed that he had spoken with Chen that morning, and the interpreter was satisfied that Chen understood and could communicate well with him. Chen told the judge during the hearing that the plea agreement had been translated for him, he understood it, and he

9

did not have any questions about it. And he responded to questions posed to him during the change of plea hearing in a logical way.

We accordingly hold that Chen's rights were adequately protected when he changed his plea to guilty. Because Chen has not shown that he failed to understand the plea he entered or that his plea was otherwise involuntary, he has not shown a manifest injustice. It was within the trial court's discretion to deny his motion to withdraw his guilty plea on this basis. *See Teshome*, 122 Wn. App. at 717.

C.      Immigration Consequences of the Guilty Plea

Chen next argues that the trial court abused its discretion in denying his motion to withdraw his plea because defense counsel did not effectively counsel him on the immigration consequences of his plea. He also asserts that the lack of a Fuzhou interpreter impacted his communications with his attorney. The State counters that defense counsel properly advised Chen that his offense was deportable and she was not required to give Chen an informed answer about the timing of deportation proceedings. We hold that the trial court did not abuse its discretion. Although there is conflicting evidence in the record about what Chen understood, the trial court weighed that evidence and we will not disturb the trial court's resulting conclusion on appeal.

1.      Ineffective assistance of counsel and counsel's duty to advise of immigration consequences of pleading guilty

"The Sixth Amendment right to effective assistance of counsel encompasses the plea process." *State v. Sandoval*, 171 Wn.2d 163, 169, 249 P.3d 1015 (2011). To determine whether a guilty plea was involuntary or unintelligent because of counsel's inadequate advice, we apply the two-part test from *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To demonstrate that he received ineffective assistance of counsel, Chen must show both

that defense counsel's performance was deficient and that the deficient performance resulted in prejudice. *Sandoval*, 171 Wn.2d 169.

Defense counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017). We strongly presume that defense counsel's performance was not deficient. *State v. Emery*, 174 Wn.2d 741, 755, 278 P.3d 653 (2012).

With respect to immigration consequences, if the applicable immigration law is clear that an offense is deportable, the defense attorney must advise the defendant that pleading guilty makes the defendant deportable. *Sandoval*, 171 Wn.2d at 170. "If 'the law is not succinct and straightforward,' counsel must provide only a general warning that 'pending criminal charges may carry a risk of adverse immigration consequences.'" *Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 369, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010)). With respect to counsel's use of interpreters, counsel's performance is not deficient if the defendant did not indicate to counsel that they were having trouble communicating. *In re Pers. Restraint of Gomez*, 180 Wn.2d 337, 353-54, 325 P.3d 142 (2014).

Where a defendant seeks to withdraw their guilty plea based on a claim of ineffective assistance, they must show a reasonable probability that, but for counsel's faulty advice, they would not have pleaded guilty and instead would have insisted on going to trial. *Sandoval*, 171 Wn.2d at 174-75. Because both prongs of the ineffective assistance of counsel test must be met, the failure to demonstrate either prong will end our inquiry. *State v. Classen*, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018).

2. Chen's counsel was not deficient in discussing with Chen the immigration consequences of his guilty plea or using a Mandarin interpreter for this discussion

Here, defense counsel properly informed Chen that the crimes he was charged with included a deportable offense. Chen nevertheless claims he was ineffectively counseled because defense counsel told him "there was 'little to no' chance of Chen facing any immigration consequences for his guilty plea," and yet he was immediately detained by ICE upon his release from jail. Br. of Appellant at 12 (quoting CP at 49). Defense counsel explained that she told Chen that she "thought there was little chance of him getting picked up upon his release from custody" in part because ICE had not issued an immigration hold to the jail. VRP (July 6, 2018) at 23, 29. An equally pressing issue, therefore, is not whether defense counsel informed Chen of the immigration consequences of pleading guilty, but whether her advice as to when ICE might detain him constituted deficient performance.

In *Sandoval*, defense counsel advised the defendant to plead guilty because he would not immediately be deported and would have sufficient time to retain an immigration attorney to ameliorate any potential immigration consequences of the guilty plea. 171 Wn.2d at 167. The defendant was then put in deportation proceedings while he awaited release from jail. *Id.* The Washington Supreme Court held that defense counsel's "categorical assurances nullified the constitutionally required advice about the deportation consequences of pleading guilty." *Id.* at 174. "The required advice about immigration consequences would be a useless formality if, in the next breath, counsel could give the noncitizen defendant the impression that he or she should disregard what counsel just said about the risk of immigration consequences." *Id.* at 173. "That Sandoval was subjected to deportation proceedings several months later, and not 'immediately' as his

counsel promised, makes no difference. Sandoval's counsel's advice impermissibly left Sandoval the impression that deportation was a remote possibility." *Id.*

In his declaration, Chen stated that he was never able to communicate effectively with defense counsel using a Mandarin interpreter. And defense counsel acknowledged that, in hindsight, Chen might not have fully understood their conversations.

But at the hearing on the motion to withdraw, defense counsel described her thinking, as well as Chen's when deciding to change his plea to guilty:

> [DEFENSE COUNSEL]: . . . And so, he was concerned about getting out of custody, and whether he would be deported. And so there was no ICE hol[d] on him, and we knew the offense was deportable, and so he wanted to get out of custody, and made the decision to plea[d] guilty.
> THE COURT: And [the interpreter] participated in this meeting that you had with Mr. Chen where you reviewed the plea agreement offer from the prosecuting attorney; is that correct?
> [DEFENSE COUNSEL]: Yes.

VRP (July 6, 2018) at 23.

This case is somewhat similar to *Sandoval* in that, according to Chen, defense counsel left Chen with the impression that deportation was a remote possibility when in fact it was not. 171 Wn.2d at 174. But unlike the attorney in *Sandoval*, Chen's counsel did not *intend* to leave Chen with the impression that deportation was a remote possibility altogether, but rather apparently informed him it was unlikely to occur exactly on the day of his release. Defense counsel correctly advised Chen that he would be subject to deportation, but was wrong about the *timing* of deportation. The problem arose not from counsel's advice, but from Chen's claimed misunderstanding of that advice interpreted for him in Mandarin. Chen claims he understood that there was little chance of ICE detaining him *at all*, as opposed to little chance of ICE detaining him *that day*.

13

In *Gomez*, the defendant claimed she received ineffective assistance of counsel based on her attorney's failure to adequately consult with her through an interpreter. 180 Wn.2d at 353. The Supreme Court rejected her argument, noting that the attorney used an interpreter for most of their conversations, the defendant never informed anyone of any ongoing problems communicating with her attorney, and the trial transcript showed that both counsel and the court respected her need for an interpreter. *Id.* at 353-54. No one indicated that Gomez did not understand the proceedings. *Id.*

Similar facts are present here in that Chen never indicated that he did not understand what was happening or the implications of pleading guilty, and defense counsel believed throughout their interactions that Chen understood her through the Mandarin interpreters. Although Chen did eventually tell counsel that his primary dialect was Fuzhou, there is no indication in the record that he told her that he was having problems communicating in Mandarin. Moreover, defense counsel described to the trial judge how she and Chen approached his change of plea. They evaluated the likely 10-year sentence if he were convicted after a trial, which counsel described as a "major contributor," the fact that his crime was deportable, and the lack of an immediate immigration hold. *See* VRP (July 6, 2018) at 23-25. And defense counsel did not recognize any problems with Chen's ability to understand at the time.

This situation is also similar to that in *People v. Vicente-Sontay*, 2014 COA 175, 361 P.3d 1046, a persuasive Colorado case. There, defense counsel used Spanish interpreters to communicate with the defendant, despite the fact that the defendant was a native speaker of K'iche from a specific area of Guatemala, and he only understood about 25 percent of the Spanish-translated court documents he had received. *Id.* at 1049. Nevertheless, the court concluded that

counsel's failure to obtain a K'iche interpreter did not constitute ineffective assistance because the defendant "spoke sufficient Spanish to engage in meaningful communications," "appeared in court with Spanish interpreters numerous times, and neither he nor any of the interpreters indicated any communication difficulties. To the contrary, [the defendant's] answers to questions posed to him were consistently responsive and appropriate." *Id.* at 1055. Therefore, "[g]iven the evidence that [the defendant] understood the substance of his conversations with trial counsel and his answers during the providency hearing, trial counsel had no duty to inquire further as to whether he sufficiently understood Spanish." *Id.*; *see also Gonzalez v. United States*, 33 F.3d 1047, 1051 (9th Cir. 1994) (attorney's failure to obtain interpreter not deficient performance because the defendant "never indicated to the court that he was experiencing major difficulty," his answers to questions were "consistently responsive," and the record did not reflect any misunderstanding as a result of language barrier).

Here, defense counsel properly advised Chen that his offense was deportable and, unlike in *Sandoval*, did not advise Chen that deportation was a remote possibility altogether. And the record does not suggest that counsel failed to adequately consult Chen through an interpreter, because Chen never gave her any reason to suspect at the time that he was not understanding her. Even when he informed counsel that Fuzhou was his preferred dialect, he apparently did not indicate that he had been having trouble understanding his Mandarin interpreters up to that point. Although Chen and defense counsel both submitted declarations stating that Chen did not fully understand their communications regarding immigration consequences, those declarations were made with the benefit of hindsight. Defense counsel confirmed for the trial court at the plea withdrawal hearing that when she had conversations with Chen using a Mandarin interpreter prior

15

to the change of plea hearing, he responded appropriately to questions and asked questions when he did not understand something. Her recitation of the factors that they considered, including the 10-year potential sentence if Chen went to trial, as well as the lack of an immigration hold, were not things that she thought he misunderstood.

Without Chen indicating at that time that he was having trouble understanding her or his interpreters, it was reasonable for counsel to proceed with the Mandarin interpreters and explain Chen's immigration risks the way she did. Moreover, the trial court heard evidence from defense counsel at the withdrawal hearing that supported its conclusion that the Mandarin interpretation was adequate and counsel did not perform deficiently. We strongly presume counsel was not deficient, *Emery*, 174 Wn.2d at 755, and we conclude that her decision to proceed with a Mandarin interpreter was objectively reasonable. We also conclude that there was evidence in the record to support a conclusion that Chen understood the relevant immigration consequences. The trial court did not abuse its discretion by denying the motion to withdraw in light of defense counsel's description at the hearing of her discussions with Chen.

CONCLUSION

We conclude that the trial court did not abuse its discretion when it denied Chen's motion to withdraw the guilty plea and we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Maxa, P.J.

Cruser, J.